GARY E. SCHNITZER, ESQ.
Nevada Bar No. 395
**KRAVITZ, SCHNITZER & JOHNSON, CHTD.**
8985 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
Tele: (702) 362-6666
Fax: (702) 362-2203
Email: gschnitzer@ksjattorneys.com

Ana Tagvoryan (admitted *pro hac vice*)
atagvoryan@BlankRome.com
Harrison Brown (admitted *pro hac vice*)
hbrown@blankrome.com
**BLANK ROME LLP**
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone:     424.239.3400
Facsimile:     424.239.3434

*Attorneys for Defendant*
TOMORROW ENERGY CORP fka SPERIAN ENERGY CORP

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ANDREW PERRONG, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>              v.<br><br>SPERIAN ENERGY CORP, a Nevada corporation, and ENERGY GROUP CONSULTANTS, INC., a Kansas corporation,<br><br>              Defendants. | Case No. 2:19-cv-00115-RFB-GWF<br><br>**DEFENDANT SPERIAN ENERGY CORP'S ANSWER TO FIRST AMENDED COMPLAINT; CROSSCLAIMS AND THIRD-PARTY COMPLAINT**<br><br>Compl. Filed: January 21, 2019<br>Am. Compl. Filed: March 5, 2019 |
| TOMORROW ENERGY CORP fka SPERIAN ENERGY CORP, a Nevada corporation,<br><br>              Cross-Claimant and Third-Party Plaintiff,<br><br>              v.<br><br>ENERGY GROUP CONSULTANTS, INC., a Kansas corporation,<br><br>              Cross-Defendant, and<br><br>ENERGY GROUP CONSULTANTS, LLC, an Ohio limited liability company,<br><br>              Third-Party Defendant. | |

ANSWER TO FIRST AMENDED COMPLAINT, CROSSCLAIM AND THIRD-PARTY COMPLAINT

Defendant Tomorrow Energy Corp fka Sperian Energy Corp ("Defendant") hereby answers the First Amended Complaint (the "FAC") of Plaintiff Andrew Perrong ("Plaintiff"), and submits its Crossclaims against co-defendant Energy Group Consultants, Inc. and its Third-Party Complaint against Energy Group Consultants, LLC, a.k.a. EGC, LLC (collectively, "EGC"). Defendant denies all allegations in the FAC unless specifically admitted.

## SPERIAN ENERGY CORP'S ANSWER TO FIRST AMENDED COMPLAINT

### INTRODUCTION

1. <u>Nature of Action</u>. Plaintiff Andrew Perrong ("Plaintiff"), individually and as class representative for all others similarly situated, brings this action against Sperian Energy for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). Sperian Energy hired Energy Group Consultants to originate new energy leads for their company. Energy Group Consultants, with the knowledge and acceptance of Sperian Energy, generated those leads with automated telemarketing calls.

**ANSWER:** Admitted that Defendant contracted with EGC, LLC to solicit prospective customers for Defendant. To the extent not expressly admitted, denied.

### PARTIES

2. Plaintiff Andrew Perrong is a resident of Pennsylvania.

**ANSWER:** Defendant lacks knowledge regarding the allegations in this paragraph and therefore is unable to admit or deny. To the extent a response is required, denied.

3. Defendant Sperian Energy Corp has its principal place of business in Las Vegas, NV, with a registered agent of Sackett National Holdings, Inc., 7373 Peak Dr., Suite 250, Las Vegas, NV.

**ANSWER:** Admitted that Defendant's principal place of business is in Las Vegas, NV, but Defendant is now known as Tomorrow Energy Corp. To the extent not expressly admitted, denied.

4. Defendant Energy Group Consultants, Inc. is a telemarketing company hired by Sperian to make telemarketing calls to generate new customers. They are a Kansas corporation with a registered agent of Robert Jason King, 3402 Airport Circle, Pittsburg, Kansas 66762.

**ANSWER:** Admitted that Defendant contracted with EGC, LLC to solicit prospective customers for Defendant. To the extent not expressly admitted, Defendant lacks knowledge regarding the allegations in this paragraph and therefore is unable to admit or deny. To the extent a response is required to any items not expressly admitted, denied.

**JURISDICTION AND VENUE**

5.   <u>Subject Matter Jurisdiction</u>. This Court has subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227. Furthermore, this Court has original jurisdiction over Plaintiff's claims pursuant to the "Class Action Fairness Act," 28 U.S.C. §§ 1332(d), 1435. While it is anticipated that neither Plaintiff nor any individual class member's claims exceeds $75,000, the aggregate amount in controversy for the Class exceeds $5 million exclusive of interest and costs, and Plaintiff is a citizen of a different state from Defendant.

**ANSWER:** Admitted that this Court has subject-matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331. To the extent not expressly admitted, this paragraph states legal conclusions to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied. Moreover, all factual allegations related to the putative class are denied.

6.   <u>Personal Jurisdiction</u>. This Court has personal jurisdiction over Sperian Energy because it has submitted to Nevada jurisdiction by registering with the Secretary of State to do business in this state, and a substantial part of the wrongful acts alleged in this Complaint were committed from Nevada. Similarly, the Court has personal jurisdiction over Energy Group Consultants because they contracted with Sperian in the State of Nevada to perform the telemarketing activities that are the subject of the Complaint.

**ANSWER:** Admitted that Defendant is registered with the Nevada Secretary of State and contracted with EGC, LLC under Nevada law, but any further factual allegations as to Defendant are denied.

7.   <u>Venue</u>. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this District. Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this

District, whereas the telemarketing calls that are the subject of this Complaint were commissioned from this District.

**ANSWER:** Admitted that Defendant is a Nevada corporation. To the extent not expressly admitted, this paragraph states legal conclusions to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied. Any further allegations as to Defendant are denied.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 47 U.S.C. § 227

8.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied.

9.     The TCPA makes it unlawful to initiate any telephone call using an automatic telephone dialing system to any cellular telephone line or any service where the called party is charged for the call. *See* 47 U.S.C. § 227(b)(l)(A)(iii).

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied.

10.     The TCPA also prohibits make multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied.

11.     In 2013, the FCC required prior express written consent for all autodialed telemarketing calls ("robocalls"). Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. [] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. []"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied.

<u>**FACTUAL ALLEGATIONS**</u>

12.     Sperian Energy is a "retail energy provider that focuses on... six deregulated energy markets." *See* http://www.sperianenergy.com (last visited January 11, 2019).

**ANSWER:** Admitted for all times relevant to the Complaint, but Defendant is now known as Tomorrow Energy Corp. To the extent not expressly admitted, denied.

13.     Sperian Energy services the following states: Illinois, New York, Pennsylvania, New Jersey, Maryland and Ohio. *Id.*

**ANSWER:** Admitted for all times relevant to the Complaint, but Defendant is now known as Tomorrow Energy Corp. To the extent not expressly admitted, denied.

14.     Sperian Energy's business model relies on contacting current energy customers in those states and convincing them to have their energy serviced through Sperian.

**ANSWER:** Denied.

15.     One of Sperian Energy' strategies for marketing these services involves the use of autodialers to solicit business.

**ANSWER:** Denied.

16.     In order to generate new sales for their business, Sperian hired Energy Group Consultants.

**ANSWER:** Admitted that Defendant contracted with EGC, LLC. To the extent not expressly admitted, denied.

17.     Energy Group Consultants, with the knowledge of Sperian, attempted to engage new clients by contacting them with autodialed telemarketing calls.

**ANSWER:** Denied.

18.     Recipients of these calls, including Plaintiff, did not consent to receive such telephone calls.

**ANSWER:** Denied as to Defendant having knowledge or providing approval or authority for EGC to make calls to Plaintiff on Defendant's behalf. For Plaintiff's allegations as to EGC in this paragraph, Defendant lacks knowledge and therefore is unable to admit or deny. To the extent a response is required for Plaintiff's allegations, denied.

19.     Instead they are "cold calls", and utilize an autodialer because they are transmitted *en masse.*

**ANSWER:** Denied as to Defendant having knowledge or providing approval or authority for EGC to make calls to Plaintiff on Defendant's behalf. For Plaintiff's allegations as to EGC in this paragraph, Defendant lacks knowledge and therefore is unable to admit or deny. To the extent a response is required, denied.

20.     Unfortunately, this system, while efficient for Sperian Energy, comes at the expense of the call recipients' privacy, and is exactly the kind of telemarketing that the TCPA was passed to prevent.

**ANSWER:** Denied as to Defendant having knowledge or providing approval or authority for EGC to make calls to Plaintiff on Defendant's behalf. For Plaintiff's allegations as to EGC in this paragraph, Defendant lacks knowledge and therefore is unable to admit or deny. To the extent a response is required, denied.

21.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied.

22.     Plaintiff's telephone number that received the telemarketing calls at issue is a service that charges the Plaintiff for each call.

**ANSWER:** Defendant lacks knowledge and therefore is unable to admit or deny. To the extent a response is required, denied.

23.     Plaintiff's telephone number that received the telemarketing calls at issue is used for residential purposes only.

**ANSWER:** Defendant lacks knowledge and therefore is unable to admit or deny. To the extent a response is required, denied.

24.     Plaintiff's telephone number that received the telemarketing calls at issue was on the National Do Not Call Registry for more than 31 days before the first calls received.

**ANSWER:** Defendant lacks knowledge and therefore is unable to admit or deny. To the extent a response is required, denied.

25.     From December 12, 2018 through December 27, 2018, Mr. Perrong's residential telephone number, was called more than 25 times by Energy Group Consultants to offer Sperian services.

**ANSWER:** Defendant lacks knowledge and therefore is unable to admit or deny. To the extent a response is required, denied.

26.     The calls all followed a substantively identical pattern.

**ANSWER:** Defendant lacks knowledge and therefore is unable to admit or deny. To the extent a response is required, denied.

27.     Mr. Perrong's residential telephone line would ring, and he would answer the phone.

**ANSWER:** Defendant lacks knowledge and therefore is unable to admit or deny. To the extent a response is required, denied.

28.     After saying "hello", Mr. Perrong would hear a loud clicking sound and a pause.

**ANSWER:** Defendant lacks knowledge and therefore is unable to admit or deny. To the extent a response is required, denied.

29.     That clicking sound is a telltale sign of a predictive dialer.

**ANSWER:** Denied.

30.     The clicking sound and the pause is an indication of the dialing system's algorithm attempting to connect Mr. Perrong to a live telemarketing representative.

**ANSWER:** Denied.

31.     A predictive dialer is an ATDS.

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied.

32.     The caller ID for all of the calls was (861) 482-5320.

**ANSWER:** Defendant lacks knowledge regarding the allegations in this paragraph and therefore is unable to admit or deny. To the extent a response is required, denied.

33.     Often, the predictive dialer Energy Group Consultants would use to call Mr. Perrong would disconnect shortly after Mr. Perrong answered.

**ANSWER:** Defendant lacks knowledge regarding the allegations in this paragraph and therefore is unable to admit or deny. To the extent a response is required as to EGC, denied.

34.     Finally, on December 27, 2018, Mr. Perrong answered the call and pretended to be interested in the sales pitch from Energy Group Consultants.

**ANSWER:** Defendant lacks knowledge regarding the allegations in this paragraph and therefore is unable to admit or deny. To the extent a response is required as to EGC, denied.

35.     By doing this, Mr. Perrong was able to verify that the calls were being made by Energy Group Consultants for Sperian, as Sperian services were promoted on the call.

**ANSWER:** Denied.

36.     Despite Mr. Perrong indicating to Sperian that he was not interested in their services, and he had canceled this investigative pursuit of their telemarketing pitch, Mr. Perrong received multiple calls from the same (861) 482-5320 number in January 2019.

**ANSWER:** Denied that Plaintiff was speaking to Sperian, and as to Defendant having knowledge or providing approval or authority for EGC to call Plaintiff on Defendant's behalf. For Plaintiff's allegations as to EGC, Defendant lacks knowledge and therefore is unable to admit or deny. To the extent a further response is required, denied.

37.     Plaintiff did not provide his prior express written consent to receive autodialed telemarketing calls on his telephone from, or on behalf of, Sperian Energy.

**ANSWER:** Denied that Plaintiff was speaking to Sperian, and as to Defendant having knowledge or providing approval or authority for EGC to call Plaintiff on Defendant's behalf. For Plaintiff's allegations as to EGC, Defendant lacks knowledge and therefore is unable to admit or deny. To the extent a further response is required, denied.

38.     Plaintiff's privacy has been violated by the above-described calls from, or on behalf of, Sperian Energy, and they constitute a nuisance as they are annoying and harassing.

**ANSWER:** Denied that Plaintiff was speaking to Sperian, and as to Defendant having knowledge or providing approval or authority for EGC to call Plaintiff on Defendant's behalf. For Plaintiff's allegations as to EGC, Defendant lacks knowledge and therefore is unable to admit or deny. To the extent the allegations contain legal conclusions, denied. To the extent a further response is required, denied.

39.     Sperian Energy is responsible for making the above-described calls.

**ANSWER:** Denied.

40.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Sperian Energy because their privacy has been violated, they were subjected to annoying and harassing calls that constitute a nuisance, and they were invasive of their privacy. The calls also occupied Plaintiff's telephone line from legitimate communication.

**ANSWER:** Denied.

41.     Unfortunately, Plaintiff's experience with Sperian Energy is not unique, as many others have lodged similar complaints after having received telemarketing calls from Sperian Energy.

**ANSWER:** Denied.

42.     First, individuals have lodged complaints recently about calls from the same Caller ID that the Plaintiff was called from:

> The first calls came around Nov 19th, and after answering it twice (and told them not to call back), they've called 35 times, which I've ignored. I think it was about the electric bill, and had my name and address info.

> this number called me telling me i can lower my electricity bill, they claim that i had requested this, which i did not! i called the electric company and found out that the rate they offered me is considerably higher than what i'm paying to pse&g! i spoke with 2 different men with thick accents which i believe sound indian to me! if anyone gets a call from this number, i think it's a scam!!! ignore the call!

> *See* https://www.reportedcalls.com/8614825320 (Last Visited January 14, 2019).

**ANSWER:** Defendant lacks knowledge regarding the allegations in this paragraph and therefore is unable to admit or deny. To the extent a response is required, denied.

ANSWER TO FIRST AMENDED COMPLAINT, CROSSCLAIM AND THIRD-PARTY COMPLAINT

43.     Sperian has previously been investigated for its telemarketing practices in 2015 when the Illinois Commerce Commission (ICC) launched an investigation (Docket No. 15-0438) into the allegedly misleading and deceptive telemarketing practices of Sperian Energy.

**ANSWER:** Denied.

44.     Furthermore, the website http://www.revdex.com/reviews/sperian-energy/1041091 (last visited January 11, 2019), details a number of complaints related to Sperian Energy's illegal telemarketing:

> This company contacted me through outbound telemarketing in violation of the federal Do Not Call act. Additionally, the message intentionally misleading, indicating that I had some business relationship with them and I need to call about my account.

> Timothy D. March 30, 2016

> Complaint: Sperian Energy contacted me by telephone on 1/29/14 at 9:00am EST with a sales pitch. My phone number is listed in the Federal Do-Not-Call Registry.

> Reviewer 1041115 March 26, 2016

**ANSWER:** Denied.

45.     Sperian is a "person," as defined by 47 U.S.C. § 153(39).

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied.

46.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA,* CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶13) (1995).

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied.

47.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied.

48.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Sperian may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling,* 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied. Further, denied that Defendant was a "seller" as alleged herein by Plaintiff.

49.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Red at 6586 (¶ 34).

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied.

50.     The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied.

51.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

**ANSWER:** This paragraph states a legal conclusion to which no response is required. To the extent Plaintiff's allegations are contrary to law, denied.

52.     Sperian is legally responsible for ensuring that Energy Group Consultants complied with the TCPA, even if Sperian itself did not itself make the calls.

**ANSWER:** Denied.

53.     Sperian knowingly and actively accepted business that originated through the illegal telemarketing calls from Energy Group Consultants.

**ANSWER:** Denied.

54.     By hiring a company to make calls on its behalf, Sperian "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

**ANSWER:** Denied.

55.     Similarly, by accepting these contacts, Energy Group Consultants "manifest[ed] assent or otherwise consent[ed] ... to act" on behalf of Sperian, as described in the Restatement (Third) of Agency. As such, Messrs. Hunter and Peters are agents of Sperian.

**ANSWER:** Denied.

56.     Moreover, Sperian maintained interim control over Energy Group Consultants actions.

**ANSWER:** Denied.

57.     For example, Sperian had absolute control over whether, and under what circumstances, it could issue a quote to a prospective customer or take over their energy needs.

**ANSWER:** Denied.

58.     Sperian also gave interim instructions to Energy Group Consultants by providing (1) geographic parameters for potential customers that Energy Group Consultants could telemarket to; (2) the volume of calling and leads it would purchase; and (3) the timing that Sperian telemarketing personnel would be available to field a prospect.

**ANSWER:** Denied.

59.     As a result, Sperian not only controlled the result of the work, but also the means by which is was accomplished through interim instructions.

**ANSWER:** Denied.

60.     In fact, Energy Group Consultants was not explicitly named in the first Complaint because they simply identified as calling on behalf of or in affiliation with Sperian.

**ANSWER:** Denied.

## **CLASS ACTION ALLEGATIONS**

61.     <u>Class Definition</u>. Pursuant to FRCP 23(b)(2) and (b)(3), Plaintiff brings this case as a class action on behalf of the national classes defined as follows:

Class 1:

All persons to whom: (a) Sperian Energy and/or a third party acting on Sperian Energy's behalf, made one or more non-emergency telephone calls; (b) using an automatic telephone dialing system; (c) to their cellular telephone number or to a telephone number that is charged for the call; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

Class 2:

All persons to whom: (a) Sperian Energy and/or a third party acting on Sperian Energy's behalf, made more than one non-emergency telephone calls; (b) to a residential telephone number; (c) that had been listed on the National Do Not Call Registry for at least 31 days prior to the first call; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

**ANSWER:** Admitted that Plaintiff purports to represent a class, but denied that such a class exists as to Defendant. Defendant further notes that these class definitions misstate the standard for a violation of the TCPA.

62. <u>Numerosity</u>. The Classes are so numerous that joinder of all members is impracticable. Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

**ANSWER:** Denied.

63. <u>Commonality</u>. There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

      a.      Whether Sperian Energy and/or its affiliates, agents, and/or other persons or entities acting on Sperian Energy's behalf violated 47 U.S.C. § 227 by making any call, except for emergency purposes, using an automatic telephone dialing system to a cellular telephone or phone for which the call recipient is charged for the service;

      b.      Whether Sperian Energy and/or its affiliates, agents, and/or other persons or entities acting on Sperian Energy's behalf violated 47 U.S.C. § 227 by making telemarketing calls to a residential telephone number that has been on the National Do Not Call Registry for more than 31 days prior to the first call;

      c.      Whether Sperian Energy and/or its affiliates, agents, and/or other persons or entities acting on Sperian Energy's behalf obtained prior express written consent prior to making the calls at issue;

      d.      Whether Sperian Energy and/or its affiliates, agents, and/or other persons or entities acting on Sperian Energy's behalf should be enjoined from violating the TCPA in the future.

**ANSWER:** Denied.

64. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Classes. Plaintiff's claims, like the claims of the Classes arise out of the same common course of conduct by Sperian Energy and Energy Group Consultants and are based on the same legal and remedial theories.

**ANSWER:** Denied.

65. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and TCPA class actions. Plaintiff and its

counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor its counsel has interests that are contrary to or that conflict with those of the proposed Classes.

**ANSWER:** Denied.

66.    <u>Predominance</u>. The Defendants have engaged in a common course of conduct toward Plaintiff and members of the Classes. The common issues arising from this conduct that affect Plaintiff and members of the Classes predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

**ANSWER:** Denied.

67.    <u>Superiority</u>. A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel the Defendants to comply with the TCPA. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against the Defendants are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

**ANSWER:** Denied.

68.    <u>Injunctive and Declaratory Relief is Appropriate</u>. The Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis.

**ANSWER:** Denied.

\\

\\

\\

### FIRST CLAIM FOR RELIEF

### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227)

69.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**ANSWER:** Defendant realleges and incorporates its responses to allegations in the preceding paragraphs as if fully set forth herein.

70.     The foregoing acts and omissions of Sperian Energy and/or its affiliates, agents, and/or other persons or entities acting on Sperian Energy's behalf constitute numerous and multiple violations of the TCPA, by (a) making a call, except for emergency purposes, using an automatic telephone dialing system to a cellular telephone or phone for which the call recipient is charged for the service and (b) making telemarketing calls to a residential telephone number that has been on the National Do Not Call Registry for more than 31 days prior to the first call.

**ANSWER:** Denied.

71.     As a result of Sperian Energy's and/or its affiliates, agents, and/or other persons or entities acting on Sperian Energy's behalf s violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made or up to $1,500 for each telemarketing call made deemed to be a "willful or knowing" violation.

**ANSWER:** Denied.

72.     Plaintiff and members of the Classes are also entitled to and do seek injunctive relief prohibiting Sperian Energy from using third parties to make outbound telemarketing calls.

**ANSWER:** Denied.

### AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative defenses without assuming any burden of pleading or proof that would otherwise rest on Plaintiff. Defendant may assert additional affirmative defenses to which it may be entitled or which may be developed during discovery, including unique affirmative defenses applicable to different putative class members of Plaintiff's

proposed class. Defendant may assert such additional affirmative defenses as the need arises, insofar as class certification has not been granted and is not appropriate in this case.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Plaintiff fails to state a claim upon which relief can be granted, including with respect to the ability to claim damages for multiple subsections of the TCPA.

## SECOND AFFIRMATIVE DEFENSE

### (First Amendment)

The TCPA violates the First Amendment of the U.S. Constitution on its face and as applied.

## THIRD AFFIRMATIVE DEFENSE

### (Bad Faith/Unclean Hands)

Plaintiff and his agents, if any, acted in bad faith and with unclean hands based on all relevant facts, law, and circumstances known by them. Accordingly, Plaintiff is barred, in whole or in part, from any recovery in this action.

## FOURTH AFFIRMATIVE DEFENSE

### (No Article III Standing)

Plaintiff has not suffered any concrete injury and thus lacks standing maintain a federal court action against Defendant.

## FIFTH AFFIRMATIVE DEFENSE

### (No Statutory Standing)

Plaintiff is not within the "zone of interests" protected by the TCPA and thus lacks statutory standing to assert such claims against Defendant.

## SIXTH AFFIRMATIVE DEFENSE

### (No Duplicative Relief)

To the extent that any relief sought by Plaintiff would be duplicative of relief sought by plaintiffs in other lawsuits, subjecting Defendant to the possibility of multiple recoveries, such recovery is barred by the Fifth and Eighth Amendment to the United States Constitution.

\\

## SEVENTH AFFIRMATIVE DEFENSE

### (Waiver and Estoppel)

Plaintiff and members of any putative class have waived their right to recover herein, in whole or in part, and/or their claims are barred by estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

### (Comparative Fault)

Any damages sustained by Plaintiff or members of any putative class must be reduced in proportion to the wrongful or negligent conduct of persons or entities other than Defendant, including third parties, under the principles of equitable allocation, recoupment, set-off, proportionate responsibility, and/or comparative fault.

## NINTH AFFIRMATIVE DEFENSE

### (Third-Party Acts)

Any alleged injury or damage sustained by Plaintiff or members of any putative class were caused, in whole or in part, by the conduct of third parties (1) who were not acting as Defendant's agents, and/or (2) was not ratified by Defendant. Moreover, there is no vicarious liability as to Defendant.

## TENTH AFFIRMATIVE DEFENSE

### (Unconstitutionality of Damages)

The statutory penalties sought by Plaintiff and members of any putative class are excessive and thus violate the Due Process Clause of the United States Constitution.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Plaintiff's claims are barred by the applicable statute of limitations.

## TWELFTH AFFIRMATIVE DEFENSE

### (Consent)

Plaintiff's claims are barred because he provided the requisite consent to be contacted to Defendant.

\\

**THIRTEENTH AFFIRMATIVE DEFENSE**

(Indemnity and Contribution)

Sperian cannot be held liable for any of Plaintiff's damages pursuant to an indemnity and contribution agreement with EGC.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant Sperian Energy Corp denies that Plaintiff is entitled to any of the relief sought, and denies that a class can be certified here. Defendant requests that the Court:

1.  Dismiss the Complaint with prejudice;

2.  Enter judgment for Defendant;

3.  Dismiss the class claims;

4.  Award to Defendant its costs, expenses, and attorney's fees incurred in defending this action; and

5.  Grant such other and further relief as the Court deems just and proper.

**SPERIAN ENERGY CORP'S CROSSCLAIM AND THIRD-PARTY COMPLAINT**

Cross-claimant and Third-Party Plaintiff Tomorrow Energy Corp fka Sperian Energy Corp ("Sperian") alleges the following against Cross-defendant Energy Group Consultants, Inc. and Third-Party Defendant Energy Group Consultants, LLC (collectively, "EGC"):

**INTRODUCTION**

1.  Sperian brings this Crossclaim and Third-Party Complaint for breach of contract, contractual indemnity, and declaratory relief against EGC arising from a contract (the "Agreement") entered between and among Sperian and Energy Group Consultants, LLC on August 28, 2017.

2.  EGC's obligations under the Agreement cover all costs and expenses, including attorney's fees, incurred by Sperian in the above-entitled lawsuit against Sperian (the "Perrong Action").

\\

\\

## PARTIES, JURISDICTION, AND VENUE

3.      Sperian is now, and was at all times relevant, a Nevada corporation. Sperian is in the business of selling electricity, gas, and related services to residential and commercial customers.

4.      Energy Group Consultants, Inc. is now, and was at all times relevant, a Kansas corporation.

5.      Energy Group Consultants, LLC is now, and was at all times relevant, an Ohio limited liability company.

6.      Upon information and belief, Energy Group Consultants, LLC is a wholly-owned subsidiary of Energy Group Consultants, Inc.

7.      Upon information and belief, at all times relevant to this action, Energy Group Consultants, Inc. was the alter ego of Energy Group Consultants, LLC, and vice versa. Moreover, Energy Group Consultants, LLC is so organized and controlled, and its affairs are so conducted, as to make it an instrumentality or adjunct of its parent, Energy Group Consultants, Inc. For purposes of the Perrong Action and these supplemental claims, the two entities are part of a single business enterprise.

8.      Subject matter jurisdiction exists with respect to the TCPA claims asserted in the Perrong Action.   Supplemental jurisdiction is proper under 28 U.S.C. § 1367 because the Crossclaim and Third-Party Complaint are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

9.      Moreover, diversity jurisdiction exists over the claims by Sperian against EGC.  As set forth above at Paragraphs 3 through 6, there is complete diversity of citizenship between Sperian, on the one hand, and both Energy Group Consultants, Inc. and Energy Group Consultants, LLC, on the other hand, as well as Mr. Perrong. In addition, the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

10.      Rule 13(g) states that a "crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

11.     Rule 14(a) states that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."

12.     Consistent with Rules 13(g) and 14(a) of the Federal Rules of Civil Procedure, this Crossclaim and Third-Party Complaint arise out of the transaction or occurrence that is the subject matter of the Perrong Action (i.e., phone calls made by, or at the discretion of, EGC), which triggers EGC's obligations to defend and indemnify Sperian for conduct alleged by Andrew Perrong ("Mr. Perrong") pursuant to the Agreement.

13.     Venue is conferred by 28 U.S.C. § 1391 because Mr. Perrong filed the above-entitled action against Sperian and EGC in this Court, and because a substantial part of the events or omissions giving rise to the cross-claims and third-party claims occurred here.

14.     In addition, despite the Agreement's reference to exclusive jurisdiction in the District Court of Nevada, Clark County, dismissal or transfer of crossclaims for indemnity or contractual damages would be unreasonable given the interrelated Perrong Action, this Court's supplemental jurisdiction over the matter, and the factors weighing in favor of this venue, such as judicial efficiency and the avoidance of inconsistent rulings.

## **GENERAL ALLEGATIONS**

### *The Agreement Between Sperian and EGC*

15.     Paragraph 2 of the Agreement notes that EGC was to "solicit new prospective customers for Sperian."

16.     In Paragraph 5 of the Agreement, EGC warranted, represented, and covenanted that EGC would "use [EGC's] skills and abilities and perform its duties hereunder in a professional and conscientious manner in accordance with all applicable law and standards . . ."

17.     In Paragraph 8 of the Agreement, EGC warranted and represented that EGC would "conduct [EGC's] business, as it relates to the services defined herein, in a commercially reasonable, legal and ethical manner."

18.   In Paragraph 8 of the Agreement, EGC also warranted and represented that EGC would "be fully knowledgeable about all federal, state and local legal and regulatory requirements related to [EGC's] activities and shall comply with all such requirements . . ."

19.   In Paragraph 8 of the Agreement, EGC also warranted and represented that EGC would "maintain a policy of comprehensive general liability insurance to cover any negligent acts committed by [EGC], or [EGC's] employees or agents during the performance of any duties under this Agreement." It further warranted and represented that EGC would "have Sperian named as an 'Additional Insured'" on that insurance policy, and would "hold Sperian free and harmless from any and all claims arising from any such negligent act or omission."

20.   In Paragraph 19 of the Agreement, EGC agreed to "comply with any federal, state or local laws, rules, and regulations or any other governmental or quasi-governmental rules and regulations . . . in regard to the conduct of Services rendered pursuant to this Agreement."

21.   In Paragraph 21 of the Agreement, EGC agreed to indemnify Sperian as follows:

> **Indemnities**: Each Party shall defend, indemnify and hold the other Party and its affiliates, and their respective officers, directions, agents and representatives harmless from and against, and will solely and exclusively bear and pay, any and all claims, suits, losses, penalties, damages and all liabilities and the associated costs and expenses (including attorneys' fees) arising in connection with its breach of obligations under this Agreement, which in the case of [EGC], shall include, but not be limited to, those incurred as a result of [EGC] or its employees or agents['] use of unapproved literature, or representations, whether written or verbal, to customers or potential customers, as well as for any claims for any errors, omissions, misconduct, or negligent acts of commission or omission.

22.   Paragraph 24 of the Agreement states that it shall be governed by Nevada law.

*The Perrong Action*

23.   On or about January 21, 2019, Mr. Perrong filed the Perrong Action. This lawsuit is referred to herein without admitting the truth of any of Mr. Perrong's allegations as to Sperian.

24.   In the Perrong Action, Mr. Perrong alleges that "[f]rom December 12, 2018 through December 27, 2018, Mr. Perrong's residential telephone number was called more than 25 times by [EGC] to offer Sperian services."

25.   When EGC or EGC's agent allegedly called Mr. Perrong's telephone number, it was not acting as Sperian's agent.

26.     EGC had no actual or implied authority to call or have EGC's agent call Mr. Perrong's telephone number on Sperian's behalf.

27.     In fact, Sperian explicitly scrubbed Mr. Perrong's telephone number from a list of approved leads before the list was returned to EGC.

28.     When EGC or EGC's agent allegedly called Mr. Perrong's telephone number, that conduct was not ratified by Sperian.

29.     Sperian lacked knowledge of and control over EGC's conduct as alleged in the Perrong Action.

30.     EGC's indemnification obligations under the Agreement cover all costs and expenses, including attorney's fees, settlements, and judgments, incurred by Sperian in the Perrong Action.

31.     On or about February 11, 2019, Sperian sent a letter to EGC demanding that EGC defend, indemnify, and hold harmless Sperian for any costs, liability, or damages relating to Mr. Perrong's allegations and the Perrong Action.

## **FIRST CAUSE OF ACTION**

### **Breach of Contract**

32.     The allegations contained in the preceding paragraphs are incorporated as if set forth herein.

33.     The Agreement is a valid contract that exists between Sperian and EGC.

34.     Sperian has performed its obligations under the Agreement, except payment of those amounts that it was contractually permitted to offset against EGC's duty to defend and indemnify Sperian in the Perrong Action.

35.     EGC's error(s), omission(s), misconduct, and/or negligence resulted in Sperian being named as a defendant in the Perrong Action.

36.     Upon information and belief, EGC or EGC's agent called Mr. Perrong's telephone number despite being told by Sperian not to do so.

37.     EGC breached the Agreement with Sperian by:

(1)     calling, or having EGC's agent call, Mr. Perrong's telephone number;

(2)     allegedly violating the TCPA;

(3)     failing to indemnify Sperian to the full extent required by the plain terms of the Agreement; and

(4)     failing to provide Sperian with insurance coverage for EGC's negligent acts and/or omissions.

38.     Sperian has been damaged and continues to be damaged as a result of Mr. Perrong's claims, including with respect to legal costs and expenses incurred since the filing of the Perrong Action.

39.     Sperian has further been damaged in having to prepare this Crossclaim and Third-Party Complaint to enforce EGC's obligations and preserve Sperian's rights pursuant to the Agreement.

40.     Sperian will continue to be damaged as it incurs further costs and expenses, including attorney's fees, during the pendency of the Perrong Action.

41.     Pursuant to the Agreement, Sperian is entitled to recover its costs and expenses, including attorney's fees, incurred in defending itself against the Perrong Action and enforcing EGC's contractual obligations as set forth herein.

## SECOND CAUSE OF ACTION

### Express Contractual Indemnity & Contribution

42.     The allegations contained in the preceding paragraphs are incorporated as if set forth herein.

43.     Sperian also incorporates by reference the contents of the Perrong Action, without admitting the allegations therein, the truth of which is expressly denied.

44.     Pursuant to the Agreement, EGC agreed to "defend, indemnify and hold [Sperian] and [Sperian's] affiliates, and their respective officers, directions, agents and representatives harmless from and against, and will solely and exclusively bear and pay, any and all claims, suits, losses, penalties, damages and all liabilities and the associated costs and expenses (including attorneys' fees) arising in connection with [EGC's] breach of obligations under this Agreement,

which in the case of [EGC], shall include . . . any claims for any errors, omissions, misconduct, or negligent acts of commission or omission."

45.     EGC's breach of the Agreement and EGC's error(s), omission(s), misconduct, and/or negligence resulted in Sperian being named as a defendant in the Perrong Action.

46.     Sperian is not responsible for the damages alleged in the Perrong Action. If Sperian is found responsible under the law for any of the allegations contained within the Perrong Action, then the conduct of EGC caused the actions alleged in the Perrong Action to happen.

47.     Sperian has been damaged and continues to be damaged as a result of Mr. Perrong's claims, including with respect to legal costs and expenses incurred since the filing of the Perrong Action.

48.     Sperian has further been damaged in having to prepare this Crossclaim and Third-Party Complaint to enforce EGC's obligations and preserve Sperian's rights pursuant to the Agreement.

49.     Sperian will continue to be damaged as it incurs further costs and expenses, including attorney's fees, during the pendency of the Perrong Action.

50.     EGC has an express duty and thus EGC is obligated to defend, indemnify, and hold Sperian harmless in an amount equal to Sperian's costs and expenses, including attorney's fees, damages, future settlement, and liability in connection with the Perrong Action.

### THIRD CAUSE OF ACTION

### Declaratory Relief

51.     The allegations contained in the preceding paragraphs are incorporated as if set forth herein.

52.     Sperian has been damaged and continues to be damaged as a result of Mr. Perrong's claims, including with respect to legal costs and expenses incurred since the filing of the Perrong Action.

53.     Sperian has further been damaged in having to prepare this Crossclaim and Third-Party Complaint to enforce EGC's obligations and preserve Sperian's rights pursuant to the Agreement.

54.     Sperian will continue to be damaged as it incurs further costs and expenses, including attorney's fees, during the pendency of the Perrong Action.

55.     There is a genuine and bona fide dispute and an actual controversy and disagreement regarding whether EGC has a continuing duty to defend and indemnify Sperian against the claims and for damages asserted in the Perrong Action.

56.     Sperian seeks declaratory relief pursuant to Nevada's Uniform Declaratory Judgments Act, Nev. Rev. Stat. § 30.010 *et seq.*

57.     EGC has an express duty and thus EGC is obligated to defend, indemnify, and hold Sperian harmless in an amount equal to Sperian's costs and expenses, including attorney's fees, and liability in connection with the Perrong Action.

58.     EGC has failed and refused to defend, indemnify, and hold Sperian harmless to the extent provided in the Agreement, but rather has agreed to limited defense under a reservation of rights.

59.     Sperian seeks a declaratory judgment that EGC has a duty to defend, including paying Sperian's costs and expenses, including attorney's fees, in the Perrong Action from its inception.

60.     Sperian seeks a declaratory judgment that EGC has a duty to indemnify Sperian for any damages assessed to or liability incurred by Sperian in the Perrong Action.

61.     Sperian seeks a declaratory judgment that it has a right to offset its costs and expenses, including attorney's fees, against any amount owed to EGC pursuant to the Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Sperian prays for the following relief against EGC, as follows:

1.     For compensatory damages including Sperian's costs and expenses, including attorney's fees, in connection with or arising out of the Perrong Action, at an amount according to proof at trial;

2.     For total and complete indemnity for any damages and liabilities assessed to Sperian in the Perrong Action;

3.     For pre-judgment interest and post-judgment interest at the legal rate;

ANSWER TO FIRST AMENDED COMPLAINT, CROSSCLAIM AND THIRD-PARTY COMPLAINT

4.    For a declaratory judgment stating that:

    a.    EGC has a duty to defend Sperian in the Perrong Action, including paying Sperian's costs and expenses, including attorney's fees;

    b.    EGC has a duty to indemnify Sperian for any damages assessed to or liability incurred by Sperian in the Perrong Action; and

    c.    Sperian has a right to offset its costs and expenses, including attorney's fees, against any amount owed to EGC pursuant to the Agreement; and

5.    For such other and further relief as is just and proper.

Dated: April 26, 2019          **KRAVITZ, SCHNITZER & JOHNSON, CHTD.**

By: */s/ Gary E. Schnitzer, Esq.*
       Gary E. Schnitzer, Esq.
       Nevada Bar No. 395
       **KRAVITZ, SCHNITZER & JOHNSON, CHTD.**
       8985 S. Eastern Avenue, Suite 200
       Las Vegas, Nevada  89123
       Tele: (702) 362-6666
       Fax:  (702) 362-2203
       Email:    gschnitzer@ksjattorneys.com