Craig B. Friedberg, NSB #004606
E-mail: attcbf@cox.net
4760 South Pecos Road, Suite 103
Las Vegas, Nevada 89121
Telephone: (702) 435-7968
Facsimile: (702) 825-8071

Anthony I. Paronich, *Admitted Pro Hac Vice*
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

ANDREW PERRONG, individually and on
behalf of all others similarly situated,

        Plaintiff,

    v.

SPERIAN ENERGY CORP, a Nevada
corporation, and ENERGY GROUP
CONSULTANTS, INC., a Kansas
corporation,

        Defendants.

NO. 2:19-cv-00115-RFB-GWF

**PLAINTIFF'S RESPONSE TO
DEFENDANT ENERGY
CONSULTANTS, INC.'S MOTION TO
DISMISS**

PLAINTIFF'S RESPONSE TO DEFENDANT ENERGY CONSULTANTS, INC.'S
MOTION TO DISMISS
CASE NO. 2:19-CV-00115-RFB-GWF

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ........................................................................................................ 1

II.     STATEMENT OF FACTS ......................................................................................... 3

III.    AUTHORITY AND ARGUMENT ........................................................................... 5

        A.      Energy Group consented to jurisdiction in Nevada in the Tele-Sales
                Agreement .......................................................................................................... 5

        B.      This Court may exercise specific jurisdiction over Energy Group without
                offending due process ....................................................................................... 6

        C.      In the absence of any due process concerns, this Court may validly
                Exercise personal jurisdiction over Energy Group ........................................... 12

        D.      Alternatively, the Court should permit jurisdictional discovery and leave
                to amend ............................................................................................................. 14

IV.     CONCLUSION ........................................................................................................... 15

1

**TABLE OF AUTHORITIES**

2

**Page No.**

3

**FEDERAL CASES**

4

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) ...................................................................... 12, 13

5

*Boschetto v. Hansing*,

6
   539 F.3d 1011 (9th Cir. 2008) ............................................................................ 14

7

*Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco Cnty.*,
   137 S. Ct. 1773 (2017) .............................................................................. 8, 9, 10

8

*Burger King v. Rudzewicz*,

9
   471 U.S. 462 (1985) ................................................................................... 6, 7, 8

10

*Cal-Tenn Fin., LLC v. Scope Auto.*,
   No. 3:18-cv-01347 (M.D. Tenn. March 20, 2019) ........................................ 5

11

*Chew v. Dietrich*,

12
   143 F.3d 24 (2d Cir. 1998) ................................................................................ 11

13

*Damler AG v. Bauman*,

14
   134 S. Ct. 746 (2014) ......................................................................................... 8

15

*Devlin v. Scardelletti*,
   536 U.S. 1 (2002) ............................................................................................. 14

16

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Group*,

17
   905 F.3d 597 (9th Cir. 2018) ............................................................................. 12

18

*In re Chinese-Manufactured Drywall Prods. Liability Litig.*,
   2017 WL 5971622 (E.D. La. Nov. 30, 2017) ......................................... 10, 11

19

*In re Oil Spill by Amoco Cadiz Off Coast of France Mar. 16, 1978*,

20
   954 F.2d 1279 (7th Cir. 1992) .......................................................................... 11

21

*LaDuke v. Burlington Northern R. Co.*,
   879 F.2d 1556 (7th Cir. 1989) ......................................................................... 13

22

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,

23
   858 F.2d 509 (9th Cir. 1988) ............................................................................ 5

24

PLAINTIFF'S RESPONSE TO DEFENDANT ENERGY CONSULTANTS, INC.'S
MOTION TO DISMISS - ii
CASE NO. 2:19-CV-00115-RFB-GWF

1

*Miles v. Shanghai Zhenhua Port Mach. Co., Ltd.*,
　　No. C08-5743FDB, 2009 WL 2473482 (W.D. Wash. Aug. 10, 2009) ......................... 14

2

*M/S Bremen v. Zapata Off-Shore Co.*,
　　407 U.S. 1 (1972) ............................................................................................................ 5

3

4

*Nat'l Equip. Rental, Ltd. v. Szukhent*,
　　375 U.S. 311 (1964) ......................................................................................................... 5

5

*Romine v. Compuserve Corp.*,
　　160 F.3d 337 (6th Cir. 1998) ......................................................................................... 13

6

7

*SEC v. Carrillo*,
　　115 F.3d 1540 (11th Cir. 1997) ..................................................................................... 10

8

*Shaffer v. Heitner*,
　　433 U.S. 186 (1977) ......................................................................................................... 6

9

10

*Sloan v. General Motors LLC*,
　　287 F. Supp. 3d 840 (N.D. Cal. 2018) .............................................................. 10, 12, 13

11

*Williams v. Yamaha Motor Co. Ltd.*,
　　851 F.3d 1015 (9th Cir. 2017) ......................................................................................... 8

12

13

*World-Wide Volkswagen Corp. v. Woodson*,
　　444 U.S. 286 (1980) ......................................................................................................... 9

14

*Zenger-Miller, Inc. v. Training Team, GmbH*,
　　757 F. Supp. 1062 (N.D. Cal. 1991) ............................................................................... 5

15

16

17

18

19

20

21

22

23

24

PLAINTIFF'S RESPONSE TO DEFENDANT ENERGY CONSULTANTS, INC.'S
MOTION TO DISMISS - iii
CASE NO. 2:19-CV-00115-RFB-GWF

1

## I.   INTRODUCTION

2      This proposed class action, involving exclusively federal claims, alleges that Energy

3 Group and Sperian violated the Telephone Consumer Protection Act, 27 U.S.C. § 227, *et seq.*

4 ("TCPA") by placing unlawful telemarketing calls to Plaintiff and other potential Sperian

5 customers without their consent. Energy Group seeks to dismiss Plaintiff's claims against it for

6 lack of personal jurisdiction, but fails to disclose that, as part of the contract Energy Group

7 entered into with Sperian to perform telemarketing on Sperian's behalf, Energy Group

8 specifically agreed to litigate any disputes relating to that contract in Nevada. Because Plaintiff's

9 TCPA claims relate to Energy Group's contract with Sperian — indeed, every call Energy Group

10 placed on Sperian's behalf was placed pursuant to that contract — Energy Group's motion

11 should be denied.

12      Energy Group nevertheless maintains that this Court lacks specific jurisdiction over

13 Energy Group because Energy Group did not purposefully direct its activities toward Nevada.

14 But the crux of the purposeful direction test is whether a defendant had "fair warning" that it

15 could be haled into a foreign court. Here, a company headquartered in Nevada — Sperian —

16 directed Energy Group to place calls selling the Nevada company's services in order to generate

17 customers and revenue for that Nevada company and did so pursuant to a contract that specifies

18 application of Nevada law and selects a Nevada forum. Plaintiff's TCPA claims would not have

19 occurred without Energy Group's connection to Nevada because the unlawful calls would not

20 have occurred without the Nevada contract.

21      Energy Group's assertion that it would be "manifestly unfair" to assert jurisdiction is

22 untrue for the same reason—Energy Group agreed to litigate all claims "relating to" the

23 agreement in Nevada and thus reasonably anticipated that it would be haled into Nevada court.

24 The crossclaim that Sperian recently filed against Energy Group for breach of contract,

PLAINTIFF'S RESPONSE TO DEFENDANT ENERGY CONSULTANTS, INC.'S
MOTION TO DISMISS - 1
CASE NO. 2:19-CV-00115-RFB-GWF

1   contractual indemnity, and declaratory relief arising from the Tele-Sales Agreement (Dkt. 26)

2   highlights the reasonableness of exercising jurisdiction over Plaintiff's claims. Even if this case

3   proceeded in Kansas or Pennsylvania, Energy Group still would have to defend claims relating to

4   the Tele-Sales Agreement, and the calls placed pursuant to that Agreement, in Nevada anyway.

5        Energy Group asserts that exercising personal jurisdiction over it would be

6   "unconstitutional." Energy Group Br. at 6:21-23. That assertion rests on a mistaken

7   understanding of the Supreme Court's decision, *Bristol-Myers Squibb Co. v. Superior Court of*

8   *California, San Francisco County*, 137 S. Ct. 1773 (2017), which involved a state court's

9   exercise of personal jurisdiction in a state-law mass action. The Court in *Bristol-Myers* explicitly

10  declined to extend its holding to either class actions or cases arising federal court—and for good

11  reason. The constitutional due-process concerns that limit the authority of a state court to

12  exercise jurisdiction are absent when it comes to a federal court's power to resolve exclusively

13  federal-law claims in federal court.

14       The absence of any meaningful due process concerns with exercising jurisdiction over

15  Energy Group means that this Court has jurisdiction pursuant to the doctrine of pendent personal

16  jurisdiction, which permits a court to assert personal jurisdiction over a defendant with respect to

17  a claim where there is not independent basis for personal jurisdiction so long as the claim, as

18  here, arises from a common nucleus of operative facts with a claim over which the court does

19  have personal jurisdiction. Such an outcome promotes judicial economy and avoids the prospect

20  of the same facts being litigated in multiple federal courts around the country.

21       For all these reasons, Plaintiff respectfully requests that Energy Group's motion be

22  denied.

23

24

PLAINTIFF'S RESPONSE TO DEFENDANT ENERGY CONSULTANTS, INC.'S
MOTION TO DISMISS - 2
CASE NO. 2:19-CV-00115-RFB-GWF

## II.    STATEMENT OF FACTS

Energy Group is a "customer acquisition company" that uses telemarketing to solicit customers for private electricity retailers. Aff. of Jason King (King Aff.) (Dkt. 16-1) ¶ 4. One of those retailers is Sperian, which is headquartered in Las Vegas. Compl. (Dkt. 1) ¶¶ 6, 12-13.

On March 28, 2017, Energy Group entered into a "Tele-Sales Agreement" with Sperian. *See* Exhibit 1, Declaration of Anthony Paronich ("Paronich Decl.") ¶ 2. The Tele-Sales Agreement sets forth the terms governing Energy Group's solicitation efforts on behalf of Sperian. *Id.* Energy Group, which the Tele-Sales Agreement defines as the "Agent," agrees to "solicit new prospective customers for Sperian" and to act "as the representative for customers that buy retail electric and related services." *Id.*

Although the Tele-Sales Agreement purports to allow Energy Group to determine the "details" and "means" of obtaining prospective customers for Sperian, in reality the contract gives Sperian the right to control Energy Group's telemarketing operations. For example, Sperian has the right to "conduct a quality control inspection" of Energy Group's "call-center operations, facility, training, and all other activities related to" Agent's transactions with Sperian. *Id*. ¶ 3. Such an inspection "will include, but not be limited to, analyzing data quality, documenting opportunities for improvement, and determining ways to eliminate gaps between current and desired levels of performance, and may include in-person observation of telemarketing activities, review of taped conversations, and review of Energy Group's records." *Id.* Sperian requires Energy Group to maintain insurance, include a comprehensive general liability insurance policy sufficient to cover any negligent acts that Energy Group might commit soliciting customers for Sperian, and to name Sperian as an additional insured. *Id.* ¶ 4. Sperian also has the right to control the lead lists that Energy Group uses to place calls and such lists become Sperian's "exclusive property." *Id.* ¶ 5.

PLAINTIFF'S RESPONSE TO DEFENDANT ENERGY CONSULTANTS, INC.'S
MOTION TO DISMISS - 3
CASE NO. 2:19-CV-00115-RFB-GWF

The Tele-Sales Agreement includes a choice-of-law and forum selection clause that provides that the Tele-Sales Agreement shall be governed by the laws of the State of Nevada. It further provides that all disputes "relating to" the Tele-Sales Agreement will be heard exclusively in the District of Nevada, for and in Clark County. It further provides that Energy Group waives any objection to jurisdiction in this venue. Paronich Decl. ¶ 6.

Pursuant to the Tele-Sales Agreement, Energy Group placed more than twenty-five telemarketing calls to Plaintiff's residential telephone number, offering him Sperian's services. Dkt. 9 (Am. Compl.) ¶ 25. Plaintiff's telephone service charged Plaintiff for every call and Plaintiff's telephone number was on the National Do-Not-Call Registry at the time of the calls. Am. Compl. ¶¶ 22-24. Other consumers have complained about similar solicitation calls from the same number that placed the call to Plaintiff. Am. Compl. ¶¶ 41-42. Plaintiff alleges that Energy Group and Sperian violated the federal Telephone Consumer Protection Act, 27 U.S.C. § 227(b) by placing such calls to him and other proposed class members. Am. Compl. ¶ 1.

Sperian filed its Answer to the Amended Complaint and alleged a cross claim against Energy Group for breach of contract, contractual indemnity, and declaratory relief arising from the Tele-Sales Agreement. Dkt. 26 at 18-26. Sperian alleges that Energy Group and itself "for purposes of the Perrong Action and these supplemental claims" are a "single business enterprise." *Id.* at 19 ¶ 7. Sperian acknowledges that the Tele-Sales Agreement provides for exclusive jurisdiction in the District Court of Nevada, Clark County, but alleges that transfer or dismissal of the crossclaims would be "unreasonable" given the "interrelated Perrong Action, this Court's supplemental jurisdiction over the matter, and the factors weighing in favor of this venue, such as judicial efficiency and the avoidance of inconsistent rulings." *Id.* at 20 ¶ 14.

### III. AUTHORITY AND ARGUMENT

**A.    Energy Group consented to jurisdiction in Nevada in the Tele-Sales Agreement.**

"Parties to a contract may agree in advance to submit to the jurisdiction of a given court." *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964). In the case of contractual consent, the lack of minimum contacts is no bar to personal jurisdiction. *Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1069 (N.D. Cal. 1991). A forum selection clause is prima facie valid and enforceable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The party opposing jurisdiction bears the burden to show that "trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 515 (9th Cir. 1988).

Here, Energy Group agreed that all disputes "relating to" the Tele-Sales Agreement would be heard in Nevada. Paronich Decl. ¶ 6. Plaintiff alleges that the calls Energy Group placed pursuant to the Tele-Sales Agreement violate the TCPA. Thus, Plaintiff's claims "relate to" the Tele-Sales Agreement. *See, e.g., Cal-Tenn Fin., LLC v. Scope Auto.*, No. 3:18-cv-01347, at *7 (M.D. Tenn. March 20, 2019) (enforcing forum selection clause where claims arose "from the business relationship established by the agreement" containing the forum selection clause").

There is nothing in the record indicating that litigating in Nevada would be "so gravely difficult and inconvenient" for Energy Group that it would be deprived of its day in court. Energy Group lists generic facts such as its "lack of operations, personnel, or connection with the state of Nevada" as support for its assertion that haling Energy Group into this Court would impose a "significant burden." Energy Group's Br. at 7:8-13. But "significant burden" is not the test. And Energy Group fails to list a single fact indicating that litigating in Nevada would be "gravely difficult and inconvenient" because it cannot. To the contrary, as a practical matter, the Tele-Sales Agreement requires Energy Group to correspond and work closely with Sperian's

Nevada headquarters in order "to allow Sperian to analyze data quality, document opportunities for improvement, and determine ways to eliminate gaps between current and desired levels of performance." Paronich Decl., ¶ 3.

Because Energy Group consented to jurisdiction and its contractual obligations require it to maintain ties with Nevada-based Sperian, its motion to dismiss should be denied.

**B.     This Court may exercise specific jurisdiction over Energy Group without offending due process.**

The key factor when determining whether it is proper to exercise personal jurisdiction over a defendant is whether the defendant had "fair warning" that it may be subjected to the jurisdiction of a foreign sovereign. *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977). The "fair warning" test is satisfied if a defendant has "purposefully directed" its activities at residents of the forum "and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Energy Group's primary argument is that this Court does not have personal jurisdiction because Energy Group has not "purposefully directed" its activities at Nevada. That is not true. Parties that "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473. That is because it is unfair for a nonresident to "purposefully derive benefit" from interstate activities and, at the same time, "allow them to escape having to account in other States for consequences that arise proximately from such activities." *Id.* at 473-74.

In *Burger King*, the Supreme Court held that a Florida court had personal jurisdiction over a franchisee because the dispute grew out of a contract that had a substantial connection

PLAINTIFF'S RESPONSE TO DEFENDANT ENERGY CONSULTANTS, INC.'S
MOTION TO DISMISS - 6
CASE NO. 2:19-CV-00115-RFB-GWF

with Florida. The Supreme Court noted that the franchisee "[e]schew[ed] the option of operating an independent local enterprise" and deliberately reached out beyond his home state to "negotiate[] with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization." *Id.* at 479-80.

So too here. Energy Group "eschewed" operation of an independent enterprise in Kansas and instead entered into a contract to provide leads on an ongoing basis for a large Nevada company that sold electrical services across the country. And, as in *Burger King*, the choice of law and choice of forum provision in Energy Group's contract with Sperian "reinforce[s]" Energy Group's "deliberate affiliation with" Nevada "and the reasonable foreseeability of possible litigation there." *Id.* at 481-82. In other words, Energy Group had "fair warning" that it could be haled into court in Nevada.

Energy Group maintains that a court *never* has personal jurisdiction over a defendant unless the injury occurred in the forum state. Energy Group's Br. at 5:11-15. Such an approach is contrary to the Supreme Court's rejection of any "talismanic jurisdictional formulas." *Burger King*, 471 U.S. at 485-86 (noting "the facts of each case must always be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice") (quotation and internal marks omitted). It is also contrary to the Supreme Court's holding that injury need only "arise out of or relate to" a defendant's forum-related activities. *Burger King*, 471 U.S. at 472.

In addition, the cases on which Energy Group relies do not involve the circumstances presented here—an out-of-state agent's unlawful act committed at the direction of a Nevada principal. The Supreme Court has observed that such agency relationships "may be relevant to

1    the existence of *specific* jurisdiction." *Damler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014)

2    (emphasis in original). And the Ninth Circuit agrees, finding that an agency relationship gives

3    rise to personal jurisdiction so long as the agent acts "on the principal's behalf and subject to the

4    principal's control." *Williams v. Yamaha Motor Co. Ltd*., 851 F.3d 1015, 1024-25 (9th Cir.

5    2017).

6           Pursuant to the Tele-Sales Agreement, Energy Group places telemarketing calls on

7    Sperian's behalf and subject to its control. The Tele-Sales Agreement refers to Energy Group as

8    Sperian's "Agent" and directs Energy Group to generate customers for Sperian. Energy Group

9    has agreed that Sperian may inspect its facilities and records, observe its telemarketing, and

10   document opportunities for improvement. Sperian requires Energy Group to maintain insurance

11   to cover negligent acts and to name Sperian as an "additional insured" under that policy. And, in

12   its crossclaim, Sperian describes the business it conducts with Energy Group as a "single

13   business enterprise." Dkt. 26 at 19 ¶ 7. As in *Burger King*, "in no sense" can the Energy Group's

14   relationship with Nevada be considered "random, fortuitous, or attenuated." *Burger King*, 471

15   U.S. at 481 (quotation and marks omitted).

16          The Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of*

17   *California, San Francisco County*, 137 S. Ct. 1773 (2017) does not prevent this Court from

18   exercising jurisdiction. In *Bristol-Myers* the Court considered a state court's approach to

19   personal jurisdiction that permitted the exercise of personal jurisdiction over claims brought by

20   out-of-state plaintiffs even in the absence of "any adequate link between the State and the

21   nonresidents' claims." *Id.* at 1781. That approach implicated the Fourteenth Amendment's Due

22   Process Clause—which "limits the personal jurisdiction of state courts." *Id.* at 1779. As the

23   Court explained, because "a state court's assertion of jurisdiction exposes defendants to the

24

PLAINTIFF'S RESPONSE TO DEFENDANT ENERGY CONSULTANTS, INC.'S
MOTION TO DISMISS - 8
CASE NO. 2:19-CV-00115-RFB-GWF

1    State's coercive power," the "power of a state court to render a valid personal judgment against a

2    nonresident defendant" is "subject to" the constraints imposed by the Due Process Clause

3    contained in the Fourteenth Amendment. *Id.* (internal quotation marks and citations omitted).

4        The Supreme Court held that California's approach to personal jurisdiction was

5    incompatible with the due process limitations contained in the Fourteenth Amendment. This was

6    so not because of any "practical problems resulting from litigating in the forum"—the defendant

7    Bristol-Myers Squibb was already facing suit in California state court for similar claims brought

8    by California residents—but because the due process "interests" of the Fourteenth Amendment

9    "encompass[] the more abstract matter of submitting to the coercive power of a State that may

10   have little legitimate interest in the claims in question." *Id.* at 1780. As the Court explained,

11   because the "States retain many essential attributes of sovereignty, including, in particular, the

12   sovereign power to try causes in their courts," the "sovereignty of each State" implies "a

13   limitation on the sovereignty of all its sister States." *Id.* (quoting *World-Wide Volkswagen Corp.*

14   *v. Woodson*, 444 U.S. 286, 293 (1980)). In other words, the Fourteenth Amendment's

15   "restrictions on personal jurisdiction" offer "more than a guarantee of immunity from

16   inconvenient or distant litigation," they also "are a consequence of territorial limitations on the

17   power of the respective States." *Id.* (internal quotation marks omitted).

18       In *Bristol-Myers*, this "federalism interest" proved "decisive." *Id.* California's exercise of

19   sovereign power over the claims of, say, Ohio plaintiffs would have encroached on the interests

20   of Ohio courts to hear their residents' cases and apply their own procedural rules. *See World-*

21   *Wide Volkswagen*, 444 U.S. at 292-93 (explaining that the "principles of interstate federalism"

22   embodied in the Due Process Clause of the Fourteenth Amendment "ensure that the States[,]

23   through their courts, do not reach out beyond the limits imposed on them by their status as

24

PLAINTIFF'S RESPONSE TO DEFENDANT ENERGY CONSULTANTS, INC.'S
MOTION TO DISMISS - 9
CASE NO. 2:19-CV-00115-RFB-GWF

1    coequal sovereigns in a federal system"). As a result, "even if" California's exercise of personal

2    jurisdiction over nonresidents' claims would expose Bristol-Myers to "minimal or no

3    inconvenience," and "even if" California was "the most convenient location for litigation,"

4    California's exercise of personal jurisdiction was incompatible with the Fourteenth

5    Amendment's Due Process Clause. *Bristol-Myers*, 137 S. Ct. at 1780-81.

6         But whatever federalism concerns limit the exercise of a state's power to decide state-law

7    claims of nonresidents, no similar concerns apply to a federal court's exercise of its authority.

8    Put simply: When it comes to federal-question claims located in federal court, "the federalism

9    concerns which hover over the jurisdictional equation" are "absent." *SEC v. Carrillo*, 115 F.3d

10   1540, 1543 (11th Cir. 1997) (quoting *United Elec. Radio, and Mach. Workers of Am. v. 163

11   Pleasant St. Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992)). That is why the Court in *Bristol-Myers*

12   made clear that its holding applied only to "the due process limits on the exercise of specific

13   jurisdiction by a State," and did not touch "on the exercise of personal jurisdiction by a federal

14   court." *Id.* at 1783-84. And it is why post-*Bristol-Myers* courts considering the constitutional

15   limitations on personal jurisdiction in federal class actions have held that "the due process right

16   does not obtain … in the same manner because all federal courts, regardless of where they sit,

17   represent the same federal sovereign, not the sovereignty of a foreign state government." *Sloan v.

18   General Motors LLC*, 287 F. Supp. 3d 840, 858-59 (N.D. Cal. 2018); *see also In re Chinese-

19   Manufactured Drywall Prods. Liability Litig.*, 2017 WL 5971622, at *20 (E.D. La. Nov. 30,

20   2017) (explaining that "federalism concerns are not present" in federal class actions). For those

21   cases in federal court that involve federal claims — like this one — there is "no risk of a state

22   court exceeding the bounds of its state sovereignty and subjecting residents of another state to

23   the coercing power of its courts." *Sloan*, 287 F. Supp. 3d at 859.

24

1    Energy Group fails to appreciate this important distinction, again repeating the assertion

2    that a court may only exercise specific jurisdiction if the injuries are suffered in the forum state.

3    Energy Group's Br. at 6:14-23. That is wrong. The Fifth Amendment's due process clause

4    "requires only that the defendant possess sufficient contacts with the United States." *In re Oil*

5    *Spill by Amoco Cadiz Off Coast of France Mar. 16, 1978*, 954 F.2d 1279, 1294 (7th Cir. 1992)

6    (internal quotation marks omitted). And so, "[w]hen the national sovereign is applying national

7    law, the relevant contacts are the contacts between the defendant and the sovereign's nation"—

8    not the contacts between the defendant and a particular state. *Id.* (internal quotation marks

9    omitted). From a constitutional standpoint, that difference matters: "under the Fifth Amendment

10   [a] court can consider the defendant's contacts throughout the United States, while under the

11   Fourteenth Amendment only the contacts with the forum state may be considered." *Chew v.*

12   *Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998).

13   The upshot for this case—which involves only federal claims in federal court—is that

14   *Bristol-Myer*'s "federalism concerns do not apply." *In re Chinese-Manufactured Drywall*, 2017

15   WL 5971622 at *20 (considering this issue in the context of multidistrict litigation in federal

16   court). *Bristol-Myers* was concerned with "limiting a state court's jurisdiction when it tried to

17   reach out-of-state defendants," a "scenario [that] is inapplicable to nationwide class actions in

18   federal court" like this one. *Id.* The relevant law, rules, and procedures that apply in the District

19   of Nevada are no different from those that apply in any other federal forum. And there is no

20   concern here about "forum shopping," or any attempt by Plaintiff to use one state's laws to

21   "disregard their own states' laws." *Id.* at *16 (discussing the concerns raised in *Bristol-Myers*).

22   Not only are Plaintiff's claims entirely federal, he chose to sue in Defendant Sperian's home

23   jurisdiction. Energy Group's invocation of *Bristol-Myers* does not justify denial of jurisdiction.

24

1
2

**C.    In the absence of any due process concerns, this Court may validly exercise personal jurisdiction over Energy Group.**

Of course, due process is not the only relevant consideration in a federal court's analysis

3
4

of personal jurisdiction. For federal claims for which Congress has not afforded nationwide

5

service of process (like those in this case), federal courts typically rely on and are constrained by

6

the service-of-process rules established by the state where the federal court is located. *See*

7

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Group*, 905 F.3d 597, 602 (9th Cir. 2018).

8

"Nevada's jurisdiction reaches the limits of due process set by the United States Constitution."

9

*Id.* (citing Nev. Rev. Stat. § 14.065). Invoking this principle, Energy Group maintains that it

10

would be "manifestly unfair" to hale it into this Court where it only has a "tenuous connection."

11

Energy Group's Br. at 6:26-28.

12

Setting aside the fact that Energy Group *consented* to jurisdiction by agreeing in the

13

Tele-Sales Agreement to resolve disputes in Nevada — a fact that independently establishes that

14

it is more than "fair" for this Court to exercise jurisdiction — the absence of any meaningful due

15

process concerns connected with this Court's exercise of personal jurisdiction over Energy

16

Group means this view is mistaken: for federal cases already properly before a federal court,

17

there is no requirement that every claim independently satisfy the test for specific jurisdiction or

18

comply with a state's service-of-process rules. To the contrary, "the doctrine of 'pendent

19

personal jurisdiction'" permits a federal court to assert personal jurisdiction "over a defendant

20

with respect to a claim for which there is no independent basis of personal jurisdiction so long as

21

it arises out of a common nucleus of operative facts with a claim in the same suit over which the

22

court does have personal jurisdiction." *Sloan*, 287 F. Supp. 3d at 860 (quoting *Action

23

Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)). The doctrine

24

recognizes that, where the exercise of personal jurisdiction over certain claims is not

PLAINTIFF'S RESPONSE TO DEFENDANT ENERGY CONSULTANTS, INC.'S
MOTION TO DISMISS - 12
CASE NO. 2:19-CV-00115-RFB-GWF

1    constitutionally forbidden, "judicial economy, avoidance of piecemeal litigation, and overall

2    convenience of the parties is best served" by combining the factually overlapping claims in one

3    forum. *Action Embroidery*, 368 F.3d at 1181.

4           This approach to jurisdiction applies here, where this Court indisputably has specific

5    jurisdiction over Plaintiff's claims against Sperian and Plaintiff's claims against Sperian and

6    Energy Group arise from the same operative facts: unlawful telemarketing calls placed pursuant

7    to the Tele-Sales Agreement. All of the *Action Embroidery* factors "counsel in favor of

8    jurisdiction." *Sloan*, 287 F. Supp. 3d at 863. For one, exercising personal jurisdiction favors

9    judicial economy because it allows Plaintiff's claims to be determined in a single jurisdiction,

10   rather than multiple jurisdictions. Energy Group's alternative — that Plaintiff litigate his claims

11   against Sperian in the District of Nevada and his claims against Energy Group in the District of

12   Kansas or the District of Pennsylvania — would mean that liability for the same calls would be

13   decided in two different courts. There is nothing desirable about this outcome. "Having the same

14   question proceed in different courts creates the possibility of overlapping nationwide classes,

15   inconsistent outcomes, [] and an obvious waste of judicial resources." *Id.* at 863. The "specter of

16   judicial duplication of effort looms particularly ominously in the class action context, where the

17   potential for inefficiency is acute." *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir.

18   1998). A party "may try to accelerate or stall proceedings in one of the forums in order to ensure

19   that the court most likely to rule in its favor will decide a particular issue first." *LaDuke v.

20   Burlington Northern R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989). Or "the possibility exists that

21   one court, unaware that the other court has already ruled, will resolve an issue differently and

22   create a conflict between the two forums." *Id.* Permitting common federal claims to be litigated

23   together in one forum—so long as the Constitution does not forbid it—advances "the major

24

1   goal[]" of "simplify[ing] litigation involving a large number of class members with similar

2   claims." *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002).

3          For another, Energy Group cannot credibly assert that exercising jurisdiction "would

4   impose a significant burden" on it given Energy Group agreed to a broad forum selection clause

5   selecting Nevada as its chosen jurisdiction for all claims "relating to" the Tele-Sales Agreement.

6   As for Plaintiff's convenience, Plaintiff has fully consented to litigate in Nevada by filing the

7   action in this Court in the first instance. And Sperian specifically alleges in its crossclaim that

8   jurisdiction is proper in this Court. Dkt. 26 at 19-20 ¶¶ 9-14. Thus, Energy Group will be

9   litigating in Nevada anyway.

10          Ultimately, judicial economy is better served by having all claims related to the calls at

11   issue in this case heard in one forum. And where doing so would not offend any due process

12   interest—fairness, convenience, or federalism—courts remain free to exercise personal

13   jurisdiction to achieve this goal.

14   **D.      Alternatively, the Court should permit jurisdictional discovery and leave to amend.**

15          Jurisdictional discovery should ordinarily be granted where "pertinent facts bearing on

16   the question of jurisdiction are controverted or where a more satisfactory showing of the facts is

17   necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). This rule prevents the

18   defendant from defeating jurisdiction "by withholding information in its contacts with the

19   forum." *Miles v. Shanghai Zhenhua Port Mach. Co., Ltd.*, No. C08-5743FDB, 2009 WL

20   2473482, at *3 (W.D. Wash. Aug. 10, 2009).

21          Plaintiff believes this Court may deny Energy Group's motion to dismiss now. However,

22   Plaintiff acknowledges that this case is in the early stages. To the extent Energy Group

23   challenges the existence of the Tele-Sales Agreement or if multiple versions of the Tele-Sales

24

PLAINTIFF'S RESPONSE TO DEFENDANT ENERGY CONSULTANTS, INC.'S
MOTION TO DISMISS - 14
CASE NO. 2:19-CV-00115-RFB-GWF

1  Agreement exist, Plaintiff respectfully requests he be permitted to take additional discovery on

2  these issues. In addition, to the extent the Court determines it needs more evidence to analyze the

3  relationship between Sperian and Energy Group in order to assess personal jurisdiction, Plaintiff

4  respectfully requests to take discovery on that issue as well. Finally, to the extent the Court

5  determines additional facts are necessary to resolve the issue, Plaintiff respectfully requests leave

6  to amend the Amended Complaint to specify further the basis for this Court's jurisdiction.

7                          **IV.    CONCLUSION**

8          For the foregoing reasons, Plaintiff respectfully requests that Energy Group's motion be

9  denied.

10         RESPECTFULLY SUBMITTED AND DATED this 30th day of April, 2019.

11
                                        PARONICH LAW, P.C.
12

13                                      By: /s/ Anthony I. Paronich, *Admitted Pro Hac Vice*
                                            Anthony I. Paronich, *Admitted Pro Hac Vice*
14                                          Email: anthony@paronichlaw.com
                                            350 Lincoln Street, Suite 2400
15                                          Hingham, Massachusetts 02043
                                            Telephone: (617) 485-0018
16                                          Facsimile: (508) 318-8100

17                                          Craig B. Friedberg, NSB #004606
                                            E-mail: attcbf@cox.net
18                                          4760 South Pecos Road, Suite 103
                                            Las Vegas, Nevada 89121
19                                          Telephone: (702) 435-7968
                                            Facsimile: (702) 825-8071
20
                                        *Attorneys for Plaintiff*
21

22

23

24

PLAINTIFF'S RESPONSE TO DEFENDANT ENERGY CONSULTANTS, INC.'S
MOTION TO DISMISS - 15
CASE NO. 2:19-CV-00115-RFB-GWF

1

<u>CERTIFICATE OF SERVICE</u>

2

     I, Anthony I Paronich, hereby certify that on April 30, 2019, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4

such filing to all counsel of record.

5

     DATED this 30th day of April, 2019.

6

              PARONICH LAW, P.C.

7

              By: <u>/s/ Anthony I. Paronich</u>, *Admitted Pro Hac Vice*
                  Anthony I. Paronich, *Admitted Pro Hac Vice*

8

                  Email: anthony@paronichlaw.com
                  350 Lincoln Street, Suite 2400

9

                  Hingham, Massachusetts 02043
                  Telephone: (617) 485-0018

10

                  Facsimile: (508) 318-8100

11

                  *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF'S RESPONSE TO DEFENDANT ENERGY CONSULTANTS, INC.'S
MOTION TO DISMISS - 16
CASE NO. 2:19-CV-00115-RFB-GWF