**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ANDREW PERRONG and JAMES EVERETT SHELTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPERIAN ENERGY CORP fka SPERIAN ENERGY CORP, a Nevada corporation, and ENERGY GROUP CONSULTANTS, INC., a Kansas corporation, and BAETYL GROUP LLC, a Texas limited liability company,<br><br>Defendants.<br><br>Related crossclaims and third-party complaints. | NO. 2:19-cv-00115-RFB-GWF<br><br>**RULE 26(F) REPORT BY THE PLAINTIFFS ANDREW PERRONG AND JAMES EVERETT SHELTON** |

Plaintiff Andrew Perrong ("Mr. Perrong") and Plaintiff James Everett Shelton ("Mr. Shelton") (collectively, "Plaintiffs") provide the following report pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Local Rule 26-1. Defendant/cross-defendant Energy Group Consultants, Inc. and third-party defendant Energy Group Consultants, LLC (Energy Group Consultants entities collectively referred to as "EGC") participated in the Rule 26(f) conference but does not join in this report. G-Energy Consultants ("G-Energy"), Baetyl Group LLC ("Baetyl"), and Kevin Sangudi ("Mr. Sangudi") (Baetyl and Mr. Sangudi are referred to collectively herein as the "Baetyl Parties") have not appeared in this action, and therefore do not join in this Joint Report.[1]

[1] EGC served G-Energy with a summons and its crossclaim on June 6, 2019. (Dkt. No. 46.) EGC has not sought G-Energy's default. Sperian served Baetyl with a summons and its crossclaim on September 18, 2019. (Dkt. No. 82.) Sperian served Mr. Sangudi with a summons and its third-party complaint on September 18, 2019. (Dkt. No. 80.) The Clerk of Court has

**A. Meet and Confer**

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Local Rule 26-1(a), a meeting (the "Conference") was held on May 23, 2019, and was attended by representatives for Plaintiffs, EGC, and Sperian. Prior to the conference, the Plaintiffs provided a draft of the report. It was not until nearly *four months later*, September 16, 2019, that counsel for Sperian sent edits to the report for both Sperian and EGC. On September 26, 2019 the Plaintiffs provided their edits to the report. On October 18, 2019, Sperian provided an updated draft. On October 22, 2019, the Plaintiffs provided their edits to that version and provided their assent to file once EGC inserted information regarding their status with respect to attorney representation, which counsel for EGC has shared is in a transition. Counsel for EGC indicated on October 22, 2019 that they would be providing edits that same day so the document could be filed. They did not. After a number of communications from Sperian to EGC's counsel, counsel for Sperian indicated they would be filing a report. Counsel for the Plaintiffs indicated that they believed that the report should be filed jointly. On October 24, 2019, Sperian filed a 26(f) report.

**B. Factual Statements**

Mr. Perrong alleges that he received more than twenty-five telemarketing calls from, or at the direction of, EGC for the benefit of Sperian, using an automatic telephone dialing system ("ATDS") to his residential telephone line despite the phone number's presence on the National Do Not Call Registry and the fact that Mr. Perrong is charged for every call, although he did not provide prior express consent to receive these calls. *See* 47 U.S.C. § 227(b); § 227(c). Additionally, Mr. Perrong alleges that EGC, or vendors acting on its behalf, made a large number of ATDS-generated calls to numbers on the National Do Not Call Registry throughout the United States in the four years prior to the filing of the Complaint, which is the applicable

---

entered default as to Baetyl and Mr. Sangudi. (Dkt Nos. 87-88.) Mr. Shelton has not yet been able to complete service of a summons and the Second Amended Complaint on Baetyl.

statute of limitations.[2] Discovery produced to date by EGC shows that Sperian received and communicated with EGC regarding calls that were made to individuals that were allegedly not authorized, yet their relationship continued.

Similarly, Mr. Shelton received telemarketing calls from, or at the direction of, Baetyl Group, LLC for the benefit of Sperian, using an automatic telephone dialing system ("ATDS") to his cellular telephone line despite the phone number's presence on the National Do Not Call Registry. *See* 47 U.S.C. § 227(b).

Plaintiffs allege that these calls violate the TCPA and that they were done for the benefit of acquiring customers for Sperian's energy services.

Mr. Perrong alleges he was called directly by EGC through their collaboration with a third party telemarketing consultant in addition to being called by their contractor, G-Energy. Mr. Perrong has served discovery on the third party contractor and EGC directly related to this point and is awaiting the production of documents that verifies those calling activities.

**C. Areas of Discovery**

Mr. Perrong issued written discovery for documents and data which includes (1) electronic data regarding the calls placed in this case; (2) electronic mail related to the allegations of this case; (3) electronic data tracking any consent to receive calls that consumers provided; (4) electronic data tracking any do-not-call requests; (5) documents and electronic data regarding the automated telephone dialing systems used to make the calls at issue; (6) contracts and other documents relating to the relationship between the defendants and their vendors; (7) defendants' policies and procedures concerning TCPA compliance regarding the marketing and promotion of its services and products; and (8) complaints of illegal telemarketing made to the defendants' and defendants' responses.

---

[2] *See* 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues").

Defendants have proposed that the parties first litigate the issue of whether they can be held vicariously liable for calls placed by a third-party vendor. Plaintiffs disagree that such phasing is appropriate for four reasons. First, phased discovery would be inefficient. If Defendants' schedule is adopted, Plaintiffs likely would need to depose Defendants multiple times, first regarding vicarious liability issues, and then about issues relating to the unlawful calls and Defendants' defenses. Issues would almost certainly arise about whether a particular deposition question or discovery request relates to "phase one" vicarious liability issues or whether the question related to other issues in the case. Such discovery disputes — which may require court intervention — would be avoided by simply requiring discovery to proceed in a single, efficient phase.

Second, the bulk of the discovery Plaintiffs request — including electronically stored email communications between Defendants and its marketing vendors — is relevant to the vicarious liability issue. The only discovery that may remain after the initial phase will be discovery directed to determining the number of calls that were placed on Defendants' behalf in violation of the TCPA. It would not be any additional burden on Defendants to produce this discovery in a single discovery period. And even the calling data is relevant to the vicarious liability issue. For example, one of the key issues on which Plaintiffs will seek discovery is whether Defendants knew or should have known that the vendors placing calls on their behalf was placing calls using an autodialer or artificial or prerecorded voice without Plaintiffs' and Class members' consent. To defeat summary judgment, Plaintiffs must establish (1) the threshold question of whether the vendor was placing calls without legally-required consent; (2) whether Defendants knew about the vendor's conduct; and (3) whether Defendants accepted the benefit of the conduct by accepting leads. *See Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-cv-06314-YGR, 2018 WL 3707283 at * (N.D. Cal. Aug. 3, 2018) (relying on *Kristensen v. Credit Payment Servs., Inc.*, 879 F.3d 1010 (9th Cir. 2018) to deny defendant's summary judgment motion where plaintiff provided evidence that defendant knew of allegedly illegal telemarketing conduct and accepted the benefits from it). To make that showing, Plaintiffs will

need data regarding the calls that the vendors placed, the equipment that they used, and the leads that they transferred to Defendants. Due to the substantial overlap between the information necessary to resolve the vicarious liability issue and information necessary to resolve the rest of the case, phasing is not appropriate.

Third, EGC's counsel has recently informed the parties that they will be seeking to withdraw or a motion to substitute counsel will be filed shortly. As such, a bifurcated discovery period on an accelerated timeline will likely be unworkable for EGC's new counsel.

Fourth, and perhaps most importantly, Defendants' phasing proposal would prejudice Plaintiffs. A consumer's ability to vindicate TCPA rights relies heavily on the ability to obtain complete and accurate records of the calls Plaintiffs and Class members received. Unfortunately, telemarketers routinely destroy calling records in the ordinary course of business. This means calling records must be obtained as early as possible in discovery, or they may be forever lost. Plaintiffs' putative class is based off the fact that the TCPA claims are governed by the four year federal statute of limitations in 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues"); *See also Giovaniello v. ALM Media, LLC*, 726 F.3d 106, 115 (2d Cir. 2013) (four-year statute of limitations applies to private TCPA claims in federal court). However, not all telecommunications companies, including the companies that are used to engage in automated telemarketing, keep records of telephone activities for up to four years, and without an immediate gathering of records, the likelihood of destruction of this evidence increases with each passing day. In fact, many of the major telecommunications providers will only retain call record information for 12-18 months, and presumably smaller telecommunications providers keep this information for an even shorter period. Proceeding with full discovery in a single phase does not preclude Defendants from filing a motion for summary judgment on the vicarious liability issue before class certification so long as Plaintiffs are able to obtain the discovery they need to respond to such a motion either before the motion is filed or pursuant to Fed. R. Civ. P. 56(d). Thus, Defendants will not be prejudiced

if discovery proceeds in a single phase, and the Plaintiffs propose the following single schedule of discovery:

| EVENT | PROPOSAL |
|---|---|
| Amendment of Pleadings | November 15, 2019 |
| Expert reports relating to class certification | January 10, 2020 |
| Rebuttal expert reports relating to class certification | February 7, 2020 |
| Class certification motion deadline | March 6, 2020 |
| Opposition to class certification deadline | 21 days after filing |
| Reply in support of class certification deadline | 14 days after the opposition is filed |
| Fact discovery deadline | To be determined following the Court's ruling on class certification, if any remaining discovery is necessary. |
| Deadline to submit supplemental expert reports if necessary | To be determined following the Court's ruling on class certification |
| Deadline to submit supplemental rebuttal expert reports if necessary | To be determined following the Court's ruling on class certification |
| Dispositive motion deadline | To be determined following the Court's ruling on class certification |
| Joint pre-trial memorandum | To be determined following the Court's ruling on class certification, but to be set 30 days after a disposition motion decision, whichever is earlier |

**D. Electronically Stored Information and Electronic Evidence**

The undersigned counsel have discussed the disclosure and preservation of electronically stored information, including but not limited to the form in which such data shall be produced, search terms to be applied in connection with the retrieval and production of such

data where appropriate, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information. The Parties expect much discovery will be in electronic form and agree to meet and confer regarding the form(s) in which electronic discovery should be produced or otherwise made available. To the extent any issues regarding the format for electronic discovery arise, the Parties will confer in good faith before bringing them to the attention of the Court.

**E. Alternative Dispute Resolution**

The parties have met and conferred about the possibility of using alternative dispute resolution processes including mediation, arbitration, and if applicable, early neutral evaluation. Sperian is amenable to early settlement discussions, but Plaintiffs are not.

**F. Alternative Forms of Case Disposition**

The parties have considered consent to trial by a magistrate judge under 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the use of the Short Trial Program (General Order 2013-01), but do not consent at this time.

**G. Later Appearing Parties**

A copy of this discovery plan and scheduling order shall be served on any party added after it is entered, or if an additional defendant should appear, within five days of its first appearance. This discovery plan and scheduling order shall apply to such later-appearing parties, unless the Court, on motion and for good cause shown orders otherwise.

**H. Extension of Modification of the Discovery Plan and Scheduling Order**

Local Rule 26-4 governs modifications or extensions of any deadline set by this Discovery Plan and Scheduling Order. Any stipulation or motion to extend any deadline set forth in the Discovery Plan and Scheduling Order must be received by the Court no later than twenty-one days before the expiration of the deadline sought to be extended.

**I. Clawback Agreement**

Pursuant to Rule 502 of the Federal Rules of Evidence, if any Party produces material or documents without intending to waive a claim of privilege or confidentiality (the "Discloser"), the Discloser does not waive any claim of privilege or confidentiality if, within a reasonable amount of time after the Discloser discovers that such material or documents were produced, the Discloser notifies all other Parties (the "Recipient(s)") of the inadvertent disclosure of privileged or confidential items, identifying the material or documents produced and stating the privilege or confidentiality provision asserted. Mere failure to diligently screen documents before producing them does not waive a claim of privilege or confidentiality.

If the Discloser asserts that it inadvertently produced privileged or confidential items in accordance with this Clawback Agreement, the Recipient(s) must return the specified material or documents and any copies within ten days of the notification. The Recipient(s) must further permanently destroy any electronic copies of such specified material or documents and affirm in writing to counsel for the Discloser of such destruction.

If the Recipient(s) contends the documents are not subject to privilege or confidentiality as asserted by the Discloser in accordance with this Clawback Agreement, the Recipient(s) may, following the return and destruction as described herein, challenge the privilege claim through a Motion to Compel or other pleading with the District Court in which the Litigation is currently pending. The Parties agree that any review of items by the judge shall be an in-camera review.

Should the Recipient(s) not challenge the Discloser's claim of privilege or confidentiality, or should the presiding judge determine that the documents are in fact subject to privilege or confidentiality, the documents, or information contained therein or derived therefrom, may not be used in the Litigation or against the Discloser in any future litigation or arbitration brought by the Recipient(s).

**J. Privilege Logs**

The parties agree to use categorical privilege designations. The parties may utilize any reasoned method of organizing the documents that will facilitate an orderly assessment as to the

appropriateness of withholding documents in the specified category.

The parties agree that written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action need not be disclosed in any privilege log.

Respectfully submitted,

*/s/ Anthony I. Paronich*
Anthony I. Paronich, *Pro Hac Vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Craig B. Friedberg, NSB #004606
E-mail: attcbf@cox.net
4760 South Pecos Road, Suite 103
Las Vegas, Nevada 89121
Telephone: (702) 435-7968
Facsimile: (702) 825-8071

Jennifer Rust Murray, *Pro Hac Vice*
Email: jmurray@terrellmarshall.com
Adrienne D. McEntee, *Pro Hac Vice*
Email: amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
*Attorney for Plaintiffs Perrong and Shelton*

CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich