Craig B. Friedberg, NSB #004606
E-mail: attcbf@cox.net
4760 South Pecos Road, Suite 103
Las Vegas, Nevada 89121
Telephone: (702) 435-7968
Facsimile: (702) 825-8071

Anthony I. Paronich, *Admitted Pro Hac Vice*
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ANDREW PERRONG and JAMES EVERETT SHELTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>TOMORROW ENERGY CORP fka SPERIAN ENERGY CORP, a Nevada corporation, and ENERGY GROUP CONSULTANTS, INC., a Kansas corporation, BAETYL GROUP LLC, a Texas limited liability company,<br><br>Defendants.<br><br>AND ALL RELATED ACTIONS. | NO. 2:19-cv-00115-RFB-EJY<br><br>**PLAINTIFFS' NOTICE OF EMERGENCY MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION FOR SANCTIONS DIRECTED TO DEFENDANT ENERGY GROUP CONSULTANTS, INC.** |

TO: THE CLERK OF THE COURT; and

TO: DEFENDANTS TOMORROW ENERGY CORP fka SPERIAN ENERGY CORP, ENERGY GROUP CONSULTANTS, INC., AND BAETYL GROUP LLC AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs move to compel discovery from Defendant Energy Group Consultants, Inc.

This motion will be based on: this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Adrienne D. McEntee, the records and file in this action, and on such other matter as may be presented before or at the hearing of the motion.

**TABLE OF CONTENTS**

**Page No.**

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 1

A. Relevant Background Regarding EGC and Call Records .......... 1

B. Plaintiffs have Repeatedly Met and Conferred with EGC About Discovery .......... 3

C. The December 10th Order Required EGC to Produce Data by December 20th .......... 4

D. EGC Has Not Complied with the Court's November 8th or December 10th Orders .......... 5

E. Evidence EGC Produced Suggests that EGC and Team Integrity are Alter Egos .......... 5

III. EVIDENCE RELIED UPON .......... 7

IV. STATEMENT OF ISSUES .......... 7

V. AUTHORITY AND ARGUMENT .......... 7

A. Sanctions are Appropriate for EGC's Failure to Preserve Relevant Evidence .......... 7

1. Plaintiffs are entitled to an adverse inference instruction .......... 9

2. EGC should pay the attorneys' fees Plaintiffs incurred in bringing this motion .......... 10

B. The Court Should Permit Plaintiffs to Image the Work Stations of Tyde Bonaparte and John Williams .......... 10

C. EGC Should Pay for the Inspection and Imaging of Work Stations at its Facility .......... 11

D. The Court Should Permit Plaintiffs to Direct Discovery to EGC Regarding its Relationship .......... 11

VI. CONCLUSION .......... 12

## TABLE OF AUTHORITIES

**Page No.**

### FEDERAL CASES

*Akiona v. United States*,
935 F.2d 158 (9th Cir. 1991) .......... 9

*Chambers v. NASCO, Inc*.,
501 U.S. 32 (1991) .......... 8

*Chan v. Soc'y Expeditions, Inc*.,
123 F.3d 1287 (9th Cir. 1997) .......... 12

*Glover v. BIC Corp*.,
6 F.3d 1318 (9th Cir. 1993) .......... 9

*Hyde & Drath v. Baker*,
24 F.3d 1162 (9th Cir. 1994) .......... 8, 9

*In re Napste*r,
462 F. Supp. 2d 1060 (N.D. Cal. 2006) .......... 7, 8

*In re Oracle Corp. Sec. Litig*.,
627 F.3d 376 (9th Cir. 2010) .......... 9

*Leon v. IDX Systems, Corp*.,
464 F.3d 951 (9th Cir. 2006) .......... 8

*Micron Technology, Inc. v. Rambus, Inc*.,
645 F.3d 1311 (9th Cir. 2011) .......... 7

*Nat'l Ass'n of Radiation Survivors v. Turnage*,
115 F.R.D. 543 (N.D. Cal. 1987) .......... 8

*Seymour v. Hull & Moreland Eng'g*,
605 F.2d 1105 (9th Cir. 1979) .......... 11, 12

*United States v. Kitsap Physicians Svs.*,
314 F.3d 995 (9th Cir. 2002) .......... 7

### FEDERAL RULES

Fed. R. Civ. P. 37(b)(2)(C) .......... 10

## I. INTRODUCTION

On December 10, 2019, the Court ordered EGC to produce to Plaintiffs by December 20, 2019 all emails, text messages, and call records for which EGC previously promised to search, along with an affidavit regarding EGC's search efforts. If EGC could not produce the call records by the deadline, it was to provide a written explanation as to why and a date certain that is at least seven (7) days before the January 14, 2020 inspection of its headquarters for production. EGC did not comply with the Court's order.

Pursuant to Rule 7-4 and Rule 26-7 of the Local Rules of the United States District Court for the District of Nevada and the Court's Minute Order Regarding December 10, 2019 Proceedings, Plaintiffs move the Court for an order which (1) sanctions EGC for failing to preserve call records; (2) requires EGC to reimburse Plaintiffs for the attorneys' fees incurred in bringing this motion; (3) expands the scope of the January 14, 2020 inspection of EGC to include inspection and imaging of the work stations of Tyde Bonaparte and John Williams; (4) requires EGC to pay for the inspection and imaging of servers and work stations at EGC; and (5) permits Plaintiffs to discover facts relevant to the relationship between EGC and Team Integrity, including whether they are alter egos.

## II. STATEMENT OF FACTS

### A. Relevant Background Regarding EGC and Call Records.

Plaintiffs' first interrogatory to EGC asked it to "[i]dentify by make, model, structure, and location the system(s), platform(s), and/or equipment used by YOU, or any VENDOR, to place automated TELEMARKETING calls." EGC responded, in relevant part: "EGC uses VICI to place telemarketing calls. The system is continually updated by VICI. It is Version 2.14-621a, build 170717-1444, 2017." Declaration of Adrienne D. McEntee in Support of Emergency Motion ("McEntee Decl."), Exh. 1. Similarly, when asked to produce documents concerning the systems, platforms, and/or equipment EGC used to place automated calls, including "all records of the automated calls that were placed," EGC responded: "EGC uses VICI to place

telemarketing calls. Documents concerning VICI's system can be found at www.vicidial.com. Discovery is ongoing and EGC reserves the right to supplement this response."[1,2] *Id.*, Exh. 2. Plaintiffs' counsel understood from discussions with EGC's then-attorneys that EGC would produce call records from the VICI dialer. Declaration of Anthony Paronich in Support of Emergency Motion ("Paronich Decl.") ¶¶ 6-7.

After significant time passed and EGC had not produced the VICI call records, Plaintiffs pressed for a specific production deadline. Paronich Decl. ¶ 8. Shortly before EGC's former lawyers requested that they be permitted to withdraw, they called Plaintiffs' counsel and claimed for the first time that their understanding was that the VICI records were not accessible. *Id*. ¶ 9. Moreover, they asserted that the VICI records (if any) weren't EGC's records after all. *Id*. ¶ 10. Instead, EGC claimed that the records belong to EGC's downstream vendor, Team Integrity Energy Group ("Team Integrity"), a Florida company. *Id*.

Plaintiffs have attempted to locate and preserve the records of calls made with the VICI dialer—whether those records belong to EGC or to Team Integrity. McEntee Decl. ¶ 13. Plaintiffs served EGC with a request to inspect its headquarters. *Id*. Plaintiffs also served Team Integrity with a subpoena. *Id*. Plaintiffs reached out to Team Integrity's principals to coordinate production. *Id*. But they failed to respond. *Id*. As a result, Plaintiffs brought an enforcement action in Florida. *Id*. However, the district court judge denied Plaintiffs' motion because Plaintiffs had not first met and conferred with Team Integrity's lawyers, even though EGC's lawyers have denied they are Team Integrity's lawyers, and to Plaintiffs' knowledge, Team Integrity does not have counsel. *Id*.

Plaintiffs have since re-initiated the subpoena process, with subpoenas directed to Team

---

[1] EGC's discovery responses are consistent with discovery EGC produced. McEntee Decl., Exh. 4.

[2] The VICI dialer is cloud-based, which means it is accessible stored, managed, and processed on a network of remote servers hosted on the Internet, rather than on local servers or personal computers, and "even allows you to have agents logged in from remote locations." *See* www.vicidial.com.

Integrity's principals, Tyde Bonaparte, John Williams, and Zachary Baker. *Id*.

**B. Plaintiffs have Repeatedly Met and Conferred with EGC About Discovery.**

On November 8, 2019, the Court bifurcated discovery and issued an order on the scope of Phase I. In relevant part, the Court ordered that "EGC, shall produce call records, without names, for the period commencing with four years before the filing of the complaint up to one week prior to production. This Order also includes production of EGC [] downlines." ECF 104.

Following the November 8th hearing, Plaintiffs repeatedly conferred with EGC regarding the production of its call records, and the call records of downline vendor, Team Integrity. The parties spoke on November 18th, and again on November 22nd. McEntee Decl. ¶ 6. When Plaintiffs had not received supplemental production by November 25th, they memorialized their demand by email. *Id.*, Exh. 5. Finally, on December 4th, EGC responded, in part: "We contacted Team Integrity about call records and received the following explanation: Team Integrity is utilizing a server in India that does not keep records longer than 30 or 90 days, depending on whether a sale is made." *Id.*, Exh. 6.

EGC's email to Plaintiffs provided few answers, but led to many questions, including (1) Who contacted Team Integrity? (2) When were they contacted? (3) Was it done in writing? McEntee Decl., Exh. 6. In addition to these questions, Plaintiffs asked EGC to produce all documents regarding the preservation instructions EGC gave to Team Integrity. *Id*. Plaintiffs also reminded EGC that the server in India is not the sole location or source of call records. *Id*. Specifically, the VICI dialer requires the use of telephone lines. *Id*. Had EGC obtained the call records from the provider of the telephone lines? If not, Plaintiffs asked EGC to do so. *Id*.

In addition to call records, Plaintiffs also asked EGC to produce internal emails by and between EGC employees, Rob Morris, Brian Ream and/or Matt Alexander, and text messages between EGC employees and Team Integrity, which the prior productions referenced. McEntee Decl., Exh. 6. On December 6th, EGC promised to provide Plaintiffs with an affidavit that described the search terms used to search EGC's email system. *Id.* ¶ 6.

EGC never fulfilled that promise. Nor has EGC answered any of the questions Plaintiffs posed regarding EGC's attempts to preserve or retrieve its call records and those of Team Integrity. EGC provided a December 6th letter from EGC's attorneys to Team Integrity's principal, Ty(de) Bonaparte, which enclosed Plaintiffs' subpoenas to Team Integrity's principals and advised Mr. Bonaparte: "By order of the court, we have been commanded to produce any and all records and other documents as outlined in the subpoenas enclosed hereto, pertaining to a call made to a telephone line identified as [Perrong's phone number]." McEntee Decl., Exh. 7.

Critically, EGC's letter did not direct Team Integrity to preserve <u>all</u> call records during the class period, as the November 8th order required. McEntee Decl., Exh. 7. EGC's failure to direct Team Integrity to preserve call records is particularly egregious since Sperian recently produced evidence that it directed EGC to preserve information related to the claims in the lawsuit, including call records back in January 2019. *Id.*, Exh. 3. Despite Sperian's directive from a year ago, and the Court's order requiring EGC to preserve all call records, EGC's letter to Team Integrity instructed them to produced evidence of calls to just one telephone number.

On December 18, 2019, Plaintiffs' counsel once again asked EGC's attorney whether he had directed Team Integrity to preserve and produce all call records during the class period. McEntee Decl. ¶ 10. EGC's attorney did not answer directly, indicating only that Team Integrity had not responded to the December 6th letter. *Id*. The failure to preserve evidence is inexcusable.

### C. The December 10th Order Required EGC to Produce Data by December 20th.

On December 10th, the Court ordered EGC to produce, by December 20th, the following: (1) all emails, text messages, and call records for which EGC previously promised to search; and (2) the affidavit previously promised to Plaintiffs. ECF 106. The Court further directed EGC to explain, in writing, how it searched for additional responsive documents, and what, if anything, was located. *Id*. And, if EGC was unable to produce call records by 5 p.m. PST on December 20, 2019, the Court ordered EGC to provide a written explanation regarding why EGC is unable to do so and a date certain that is at least seven (7) days before the inspection for production of such

call records. *Id.* The Court admonished: "[I]f EGC cannot, does not cooperate, then they are a party to this case, and they are subject to orders to show cause for contempt, adverse inferences, and more substantial sanctions if necessary." ECF 108 (Transcript at 24:9-12).

**D. EGC Has Not Complied with the Court's November 8th or December 10th Orders.**

EGC failed to produce any emails, text messages, or call records. McEntee Decl. ¶ 14. Nor has EGC provided any explanation for its failure. *Id.* EGC did not, for example, produce any writing that described whether it searched for additional responsive documents, let alone how the search for additional documents (if any) took place. EGC also failed to produce the affidavit previously promised to Plaintiffs. To date, Plaintiffs have no assurance that EGC will provide responsive documents or ESI prior to the January 14, 2020 inspection of EGC's headquarters.

**E. Evidence EGC Produced Suggests that EGC and Team Integrity are Alter Egos.**

Plaintiffs learned recently that one of Team Integrity's principals, Tyde Bonaparte, moved from Florida to Pittsburgh, Kansas. Pittsburgh, Kansas, which has a population of approximately 20,000 people, happens to be the same town in which EGC is headquartered. Paronich Decl. ¶ 12.

On December 18, 2019, a process server knocked on Mr. Bonaparte's door. McEntee Decl., Exhs. 8-9. A man who was not Mr. Bonaparte answered the door. *Id.* He told the process server that Mr. Bonaparte was "at the office working." *Id.* When the process server asked the name of the office, the man responded "EGC" and gave the process server an address on Airport Drive. *Id.* The process server drove to the business, "which was clearly marked EGC on the outside." *Id.* An employee at EGC told the process server that "Mr. Bonaparte had just left to run errands." *Id.* The process server was able to serve Mr. Bonaparte at his Pittsburgh residence later that evening. *Id.*

Up until that point, Plaintiffs had been unable to locate and serve Team Integrity principal, John Williams, who they believed resided in Florida. Paronich Decl. ¶ 13. The process server reported that the unidentified man who answered the residence door said he both worked

and lived with Mr. Bonaparte. McEntee Decl., Exhs. 8-9. Plaintiffs suspected the unidentified man was John Williams and provided the process server with the John Williams subpoena. Their suspicion was correct. When the process server returned to the residence to serve Mr. Bonaparte, Mr. Williams was also present, and the process server completed service on both.

On November 18, 2019, counsel for Plaintiffs and EGC conferred about outstanding discovery. McEntee Decl. ¶ 6. During the conversation, Plaintiffs notified EGC that they had learned Mr. Bonaparte recently moved to Pittsburg, Kansas, and asked whether he worked for EGC. *Id*. On November 22, 2019, EGC's counsel dispelled the notion, representing that EGC and Team Integrity were separate companies and that Bonaparte was not an employee. *Id.*

Mr. Williams' representation to the process server that he and Bonaparte work at EGC contradicts the representations made by EGC's counsel. This contradiction is material and raises significant questions about the relationship between EGC and Team Integrity, including whether they are alter egos. Moreover, EGC produced several emails in which EGC personnel give Team Integrity personnel instructions, providing further evidence that EGC and Team Integrity may, in fact, be part of the same enterprise. Plaintiffs thus request permission to serve EGC with written discovery seeking information regarding the relationship between EGC and Team Integrity, which is otherwise beyond the scope of Phase I discovery.

Plaintiffs are scheduled to inspect EGC's headquarters on January 14, 2020. There, they will search the server and image the work station of EGC custodian, Matthew Alexander, for evidence of call records or their deletion or spoliation. Based on the declaration of the process server, Plaintiffs believe the work stations of Tyde Bonaparte and John Williams will also provide evidence of call records or their deletion or spoliation, as well as evidence relevant to whether EGC and Team Integrity are alter egos. As Bonaparte and Williams have not responded to Plaintiffs' subpoenas, Plaintiffs request permission to image their work stations.

## III. EVIDENCE RELIED UPON

Plaintiffs rely on the Court's November 8th and December 10th orders, the Declarations of Anthony Paronich and Adrienne D. McEntee, and the balance of papers and pleadings in this matter.

## IV. STATEMENT OF ISSUES

1. Whether the Court should sanction EGC for failing to preserve evidence?

2. Whether the Court should order EGC to reimburse the attorneys' fees Plaintiffs incurred in bringing this motion?

3. Whether the Court should expand the scope of the January 14, 2020 inspection of EGC to include inspection of the workstations of Tyde Bonaparte and John Williams?

4. Whether the Court should require EGC to pay for the inspection and imaging of servers and work stations at EGC?

4. Whether the Court should expand the scope of discovery to the relationship between EGC and Team Integrity, including whether they are alter egos?

## V. AUTHORITY AND ARGUMENT

### A. Sanctions are Appropriate for EGC's Failure to Preserve Relevant Evidence.

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *United States v. Kitsap Physicians Svs.*, 314 F.3d 995, 1001 (9th Cir. 2002). "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Technology, Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (9th Cir. 2011).

A party's duty to preserve evidence begins when litigation is "pending or reasonably foreseeable." *Micron Technology*, 645 F.3d at 1320; *see also United States v. Kitsap Physicians Serv.*, 314 F.3d at 1001; *In re Napste*r, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). Once a party is on notice of a potential claim, it is under a duty to preserve evidence which it knows, or

reasonably should know, is relevant to the claim or potential litigation. *In re Napster*, 462 F.Supp.2d at 1067 (citing *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556–57 (N.D. Cal. 1987) (noting, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action"). Once a duty to preserve is triggered a party has a duty to suspend any existing policies relating to deleting or destroying files and preserve all relevant documents related to litigation. *In re Napster*, 262 F. Supp. 2d at 1070. The duty to preserve discoverable materials is an affirmative one. *Turnage*, 115 F.R.D. at 557–58.

District courts may impose sanctions for spoliation of evidence as part of their inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Napster*, 462 F.Supp.2d at 1066 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). In *Chambers*, the Supreme Court traced the historical origin of the inherent power of a federal court to sanction a litigant for bad-faith conduct. 501 U.S. at 43–50. A trial court has the inherent authority to sanction a party for discovery and litigation abuse. *Id*. "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence and submission to their lawful mandates." *Id*. at 43. The court's inherent power is not governed by rule or statute "but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. The court's inherent power to sanction "can be invoked even if procedural rules exist which sanction the same conduct." *Id*. at 49.

Spoliation sanctions under Rule 37 are also available against a party who fails to obey an order to provide discovery. *Leon v. IDX Systems, Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). The Ninth Circuit applies the same burden of proof under Rule 37(b)(2) and Rule 37(d). The burden is on the party who fails to comply with its discovery obligations to show substantial justification, or that an award of expenses and/or other sanctions would be unjust. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994). A finding of bad faith is not required for sanctions

under Rule 37. *Id*.

1. <u>Plaintiffs are entitled to an adverse inference instruction.</u>

A court may instruct the jury that it may draw an adverse inference to the party or witness responsible for destroying the evidence. *See Glover v. BIC Corp*., 6 F.3d 1318, 1329 (9th Cir. 1993). The court may instruct the jury that that it may infer the spoliated evidence would have been unfavorable to the responsible party. *Id*. A finding of "bad faith" is not a prerequisite to an adverse inference instruction. *Id*. (citing *Unigard Secur. Ins. Co. v. Lakewood Eng'g & Mfg. Corp*., 982 F.2d 363, 368–70 n.2 (9th Cir. 1992)). An adverse inference instruction may be given upon a finding that the evidence was destroyed after a party was on notice of the potential relevance of the evidence to the litigation. *Id*.

The Ninth Circuit has identified twin rationales for permitting the trier of fact to draw an adverse inference from the destruction of evidence relevant to a case. *Akiona v. United States*, 935 F.2d 158, 161 (9th Cir. 1991). The evidentiary rationale for an adverse inference is based on "the common sense observation" that a party who has notice that evidence is relevant to litigation and destroys the evidence is more likely to have been threatened by the evidence than is a party in the same position who does not destroy evidence. *Id*. And the deterrence rationale for permitting the trier of fact to draw an adverse inference from the destruction of evidence punishes a party for wrongdoing and is intended to deter others from destroying relevant evidence. *Id*. A trial court's "adverse inference sanction should be carefully fashioned to deny the wrongdoer the fruits of its misconduct yet not interfere with the party's right to produce other relevant evidence." *In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 386 (9th Cir. 2010).

Here, EGC was on notice of Plaintiffs' lawsuit at least as of January 23, 2019 when Sperian sent EGC the complaint and directed EGC to preserve evidence. There is no question that EGC had a duty to preserve relevant evidence, including all call records. EGC's failure to preserve more likely than not destroyed relevant evidence. As a result, Plaintiffs request that the jury be instructed that: EGC had a duty to preserve relevant evidence, including call records

during the class period; that this evidence was allegedly destroyed because EGC did not take steps to change a retention policy that apparently only requires EGC's vendors to keep records for 30 to 90 days; as a result, the jury may infer that EGC failed to preserve and destroyed evidence because the evidence would be favorable to Plaintiffs, and unfavorable to Defendants.

Finally, because EGC does not appear to have made any attempt to contact the companies associated with the telephone lines used to operate the VICI dialer, Plaintiffs also request that EGC be precluded from introducing testimony or other evidence regarding its claim that "the server in India does not keep records longer than 30 or 90 days."

2. EGC should pay the attorneys' fees Plaintiffs incurred in bringing this motion.

Rule 37(b)(2)(A) authorizes the court to sanction a party "For Not Obeying a Discovery Order." "If a party … fails to obey an order to provide … discovery … the court where the action is pending may issue further just orders." *Id*. Moreover, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Sanctions are justified here. The Court's November 8th and December 10th orders collectively directed EGC to produce its call records, and the call records of its downline vendors (such as Team Integrity), and to do so by December 20th. EGC's failure to comply with the Court's orders was not "substantially justified." Plaintiffs incurred approximately $11,050 in fees drafting this motion. EGC and its attorneys should be required to reimburse their fees within ten days of the Court's order directing them to do so.

**B. The Court Should Permit Plaintiffs to Image the Work Stations of Tyde Bonaparte and John Williams.**

EGC has represented that Tyde Bonaparte and John Williams, who are principals of Team Integrity, do not work for EGC. However, within the last two months, both men moved from Florida, where Team Integrity is headquartered, to Pittsburg, Kansas, where EGC is

headquartered. Moreover, Mr. Williams answered the door of Mr. Bonaparte's Pittsburg, Kansas residence and advised the process server that Mr. Bonaparte was at work at EGC, where the two work together. Whether Mr. Bonaparte and Mr. Williams are considered employees of EGC, it is apparent that both conduct business from EGC's facility. And according to EGC's attorneys, Team Integrity (and thus, Mr. Bonaparte and Mr. Williams) is knowledgeable about the call records, including where and how they are stored in India. It stands to reason that work stations used by Mr. Bonaparte and Mr. Williams have critical information about the whereabouts of call records that EGC should have preserved for at least the last eleven months, if not longer. Therefore, Plaintiffs respectfully request that the Court extend the scope of Phase I discovery to allow Plaintiffs to image not only the work station of ECG custodian, Matt Alexander, but also the work stations of Mr. Bonaparte and Mr. Williams.

### C. EGC Should Pay for the Inspection and Imaging of Work Stations at its Facility.

On January 14, 2020, Plaintiffs will inspect and image EGC's computer system, a step that would have been unnecessary had EGC preserved and produced information it was ordered to preserve, and which is undisputedly relevant. Rule 37(b)(2)(A) authorizes courts to issue "just orders" when sanctioning parties. Had EGC preserved call records, as Sperian directed in January 2019, Plaintiffs would not have been required to inspect EGC's facility for evidence of those records (or their spoliation) now. Therefore, the only just result is for EGC to pay for the inspection.

### D. The Court Should Permit Plaintiffs to Direct Discovery to EGC Regarding its Relationship with Team Integrity.

Finally, Plaintiffs respectfully request that they be permitted to conduct discovery directed to EGC that is beyond the scope of Phase I in order to determine the exact nature of the relationship between EGC and Team Integrity, including whether they are alter egos.

Piercing the corporate veil has long been a recognized equitable remedy to prevent injustice that would result from recognition of the corporate entity. *See Seymour v. Hull &*

*Moreland Eng'g*, 605 F.2d 1105, 1111 (9th Cir. 1979). Under federal common law, a corporate veil may be pierced "where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business ...." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997). The elements for piercing the corporate veil are similar under Nevada law.[3]

The recent relocation of Team Integrity's principals from Florida to Pittsburg, Kansas—the same small town where EGC is located—is suspicious by itself. Coupled with Williams' subsequent statement to the process server that he and Bonaparte work at EGC (despite the prior denial by EGC's counsel when asked directly), and EGC's failure to preserve Team Integrity's call records, one can reasonably infer there has been fraud. The details of the interest, ownership, and financial relationship between Team Integrity and EGC are of paramount importance.

## VI. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the entry of an order which (1) sanctions EGC for failing to preserve call records; (2) requires EGC to reimburse Plaintiffs for the attorneys' fees incurred in bringing this motion; (3) expands the scope of the January 14, 2020 inspection of EGC to include inspection of the workstations of Tyde Bonaparte and John Williams; (4) requires EGC to pay for the inspection and imaging of servers and work stations at EGC; and (5) permits Plaintiffs to discover facts relevant to the relationship between EGC and Team Integrity, including whether they are alter egos.

[3] (1) The corporation must be influenced and governed by the person asserted to be its alter ego; (2) There must be such unity of interest and ownership that one is inseparable from the other; and (3) The facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice.
*Ecklund v. Nevada Wholesale Lumber Co*., 93 Nev. 196, 197, 562 P.2d 479, 479–80 (1977).

RESPECTFULLY SUBMITTED AND DATED this 27th day of December, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Adrienne D. McEntee, *Admitted Pro Hac Vice*
Jennifer Rust Murray, *Admitted Pro Hac Vice*
Email: jmurray@terrellmarshall.com
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email: amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Anthony I. Paronich, *Admitted Pro Hac Vice*
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

Craig B. Friedberg, NSB #004606
E-mail: attcbf@cox.net
4760 South Pecos Road, Suite 103
Las Vegas, Nevada 89121
Telephone: (702) 435-7968
Facsimile: (702) 825-8071

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I, Adrienne D. McEntee, hereby certify that on December 27, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ana Tagvoryan
Email: atagvoryan@blankrome.com
Harrison Brown
Email: hbrown@blankrome.com
BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, California 90067
Telephone: (424) 239-3400
Facsimile: (424) 239-3434

*Attorneys for Defendant Sperian Energy Corp.*

Adam Knecht
Email: aknecht@alversontaylor.com
ALVERSON TAYLOR & SANDERS
6605 Grand Montecito Parkway, Suite 200
Las Vegas, Nevada 89149
Telephone: (702) 384-7000
Facsimile: (702) 385-7000

*Attorneys for Defendant Energy Group Consultants, Inc.*

DATED this 27th day of December, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Adrienne D. McEntee, *Admitted Pro Hac Vice*
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email: amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiffs*